Barbara R. HUTCHISON, Plaintiff,

v.

**LAKE OSWEGO SCHOOL DISTRICT
No. 7 et al., Defendants.**

Civ. No. 73–339.

United States District Court,
D. Oregon.

April 25, 1974.

Carol A. Hewitt, Lindsay, Nahstoll, Hart, Duncan, Dafoe & Krause, Portland, Or., for plaintiff.

Jack L. Kennedy, Kennedy & King, Portland, Or., for defendants.

## OPINION

SKOPIL, District Judge:

### I.

### NATURE OF THE ACTION

This is an action for a declaratory judgment and damages for defendants' failure to permit plaintiff to apply her accumulated sick leave to childbirth-caused incapacity. Plaintiff seeks relief under Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. § 2000e et seq.) and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

### II.

### JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1343 and 42 U.S.C. § 2000e et seq.

### III.

### FACTS

From September, 1971, to June, 1973, plaintiff, Barbara R. Hutchison, was employed by defendant Lake Oswego School District No. 7 as a part-time teacher of social studies at Waluga Junior High School.

Defendant Lake Oswego School District No. 7 (hereinafter "School District") is a school district created by the State of Oregon pursuant to the Constitution and statutory law of the State of Oregon.

Defendants Cottle, Allen, Melrose, Bullard, and Putnam are duly elected members of the Board of Education of defendant School District.

During July or August of 1972, plaintiff informed Dale Reynolds, principal of Waluga Junior High School, that she was pregnant and would be absent for approximately three weeks with the birth of her child.

**1058**

On January 27, 1973, the child was born. From January 29, 1973, through February 16, 1973, a period of fifteen and one-half working days, plaintiff was absent from her employment. During this period she was unable to work.

At the time of childbirth, plaintiff had accrued fifteen and one-half days sick leave. When she returned to her employment, she requested that she be allowed to use her accumulated sick leave for her absence. Lloyd F. Millhollen, Superintendent of Schools, Lake Oswego Public Schools, denied her request. Dr. Millhollen's denial was affirmed by the defendant board members.

The Policies and Procedures of Lake Oswego School District No. 7 allow sick leave only for "illness or injury". The School District has determined that normal childbirth is not an "illness or injury". Plaintiff was not permitted to draw pay from her accrued sick leave. The sum of $339.59 was deducted from her wages because of her absence and the necessity to hire a replacement during that absence.

On March 14, 1973, plaintiff filed with the Equal Employment Opportunity Commission (EEOC) a charge that defendants had discriminated against her because of her sex. On April 26, 1973, the EEOC notified plaintiff that she could, within ninety days, commence a civil action. On May 2, 1973, the present action was filed.

Plaintiff contends that defendants' refusal to allow her to apply her accrued sick leave is an unlawful employment practice within the meaning of 42 U.S.C. § 2000e–2. It distinguishes between childbirth-caused disabilities and all other medical disabilities, discriminating against her on the basis of sex. Plaintiff asserts that defendants' use of this distinction for the purpose of determining employment benefits is an arbitrary classification. It denies plaintiff equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution.

IV.

JURISDICTION OVER DEFENDANTS

1) *Title VII Claims.*

Defendants Cottle, Allen, Melrose, Bullard, and Putnam assert that as members of the Lake Oswego School District Board they are not employers within the meaning of 42 U.S.C. § 2000e–2(a). They contend that plaintiff's only employer was the School District.

Section 2000e(b) defines "employer" as a person engaged in an industry affecting commerce who has fifteen or more employees, and any agent of such a person. Section 2000e(a), in part, defines "person" as one or more individuals, governments, or political subdivisions.

As enacted, Title VII applied only to private employers. In 1972 it was amended to promote equal employment opportunities by extending coverage to state and municipal employees and educational institutions. 42 U.S.C. § 2000e(a), Public Law 92–261, 86 Stat. 103, March 24, 1972. Title VII applies to school teachers in public schools. LaFleur v. Cleveland Board of Education, 465 F.2d 1184, 1186 (6th Cir. 1972), aff'd 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974).

The power to hire lies with the School Board under the provisions of ORS 342.505:

". . . the district school board, at a general or special meeting called for that purpose, may hire teachers and shall record such action in the minutes. . . ."

ORS 332.505 provides that a district school board may:

"(2) Employ principals, teachers, . . . and define the duties, terms and conditions of employment and fix the compensation.

"(3) Compensate district employes in any form which may include, but shall

not be limited to, insurance, tuition reimbursement, and salaries."

■■■ Defendant School District is an employer within the meaning of 42 U.S.C. § 2000e. The School Board members are the agents of the School District and thus are employers. The School District is immune from suit under the doctrine of sovereign immunity. This immunity does not extend to the remaining defendants for acts which were unconstitutional or beyond their statutory powers. Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1948). Officials are not entitled to absolute immunity. They are entitled to a limited or a qualified immunity for acts done by them in good faith and within the scope of their official duties. Bennett v. Gravelle, 323 F.Supp. 203, 213 (D.C.Md. 1971), aff'd, 451 F.2d 1011 (4th Cir. 1971). However, where discrimination is practiced, good faith and the discretionary exception cannot be interjected as defenses. A successful defense on the merits merges with a successful defense under the qualified-immunity doctrine. McLaughlin v. Tilendis, 398 F.2d 287, 291 (7th Cir. 1968). To hold otherwise would thwart the intent and purpose of Title VII.

**2) *Equal Protection Claims.***

The defendants seek dismissal. They contend they are immune from suit under the Equal Protection Clause of the Fourteenth Amendment. They also maintain that plaintiff has asserted a denial of equal protection under the Civil Rights Act of 1971, 42 U.S.C. § 1983, and that the School District is not a person within the meaning of § 1983.

Under the doctrine of sovereign immunity, the defendant School District is immune from suit. It is unnecessary for me to consider whether the School District is a person within the meaning of § 1983. Furthermore, plaintiff has not asserted a claim under § 1983. It would be improper to extend plaintiff's Complaint to resolve this issue in the manner sought by defendants.

Sovereign immunity will not be extended to the remaining defendants for acts which were unconstitutional or beyond their statutory powers. Larson v. Domestic and Foreign Commerce Corp., *supra.*

## V.

### TITLE VII CLAIMS

The sick-leave provisions of the School District are not in dispute. The question presented is the application of Title VII to these facts.

"Sick leave" is defined in ORS 342.-595(1)(a) as "absence from duty because of a teacher's illness or injury".

Section 415 of the Policies and Procedures of the School District describes leaves of absence. Section 415.1 provides:

"Sick leave is to be used only at the time of illness or injury of the employee."

The School District provides for maternity leave in § 415.3:

"Maternity leave-of-absence may be granted to a permanent teacher. Requests for leave shall be made within the first three months of pregnancy. The teacher may be asked to begin such leave at any time during the pregnancy as determined by the building principal, after consultation with a representative of the superintendent and the attending physician."

The School District determined that pregnancy or childbirth is not an "illness or injury". The School Board was guided by ORS 342.595(1)(a). It also obtained an opinion on state maternity and sick-leave policies from Milt Baum, Director of Legal and Executive Services for the Oregon State Department of Education. The School District was advised that the Oregon law does not include maternity within the definition of "illness or injury".

In contrast, we must consider 42 U.S. C. § 2000e–2(a):

"It shall be an unlawful employment practice for an employer—

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex, . . . or

"(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex, . . ."

The United States Equal Employment Opportunity Commission, the administrative body created by Title VII, has issued guidelines which provide that the separate treatment of maternity disability from other temporary disabilities is prohibited as discrimination on the basis of sex.

29 C.F.R. § 1604.10 Employment policies relating to pregnancy and childbirth.

"(a) A written or unwritten employment policy or practice which excludes from employment applicants or employees because of pregnancy is in prima facie violation of title VII.

"(b) Disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth and recovery therefrom are, for all job-related purposes, temporary disabilities and should be treated as such under any health or sick leave plan available in connection with employment. Written and unwritten employment policies and practices involving matters such as the commencement and duration of leave, the availability of extensions, the accrual of seniority and other benefits and privileges, reinstatement, and payment under any health or temporary disability insurance or sick leave plan, formal or informal, shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities."

29 C.F.R. § 1604.9 Fringe benefits.

"(a) 'Fringe benefits', as used herein, includes medical, hospital, accident, life insurance and retirement benefits; profit-sharing and bonus plans; leave; and other terms, conditions, and privileges of employment.

"(b) It shall be an unlawful employment practice for an employer to discriminate between men and women with regard to fringe benefits."

■ EEOC guidelines, while not law, are entitled to "great deference" by the courts. Phillips v. Martin Marietta Corp., 400 U.S. 542, 545, 91 S.Ct. 496, 27 L.Ed.2d 613 (1970); Griggs v. Duke Power Co., 401 U.S. 424, 434, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

The guidelines were applied in the case of Naran Andreev v. National Broadcasting Co., CCH EEOC Decisions 1973, ¶ 6380. It was held that the condition of pregnancy must be treated the same as any other illness. The EEOC held that the employer's sick-leave policy was an unfair labor practice under Title VII because it differentiated between maternity leave and other kinds of temporary disabilities.

■ State and local governments and educational institutions were exempt from Title VII until 1972. Consequently there are few Title VII cases involving pregnancy. The question has arisen frequently, however, in cases claiming a denial of equal protection or a denial of civil rights under color of law. Title VII standards are more compelling because they place a statutory mandate upon the employer. Thus, while a fixed policy of classification may survive an equal-protection attack, it may still violate Title VII. Wetzel v. Liberty Mutual Ins. Co., 372 F.Supp. 1146, 7 FEP Cases 34 (W.D.Pa.1974); Schattman v. Texas Employment Commission, 459 F.2d 32 (5th Cir. 1973), cert. den., 409 U.S. 1107, 93 S.Ct. 901, 34 L.Ed.2d 688 (1973), reh.

den., 410 U.S. 959, 93 S.Ct. 1414, 35 L. Ed.2d 695 (1973). The most recent Equal Protection Clause cases dealing with pregnancy do provide some assistance.

■ The following defenses to plaintiff's Title VII claim are asserted: (1) plaintiff must show dissimilar treatment of persons similarly situated, (2) pregnancy is *sui generis,* (3) pregnancy is voluntary, (4) the maternity sick-leave policy does not apply to women in an area in which they compete with men, and (5) benefits could not be fairly awarded because of the varying lengths of incapacity among women due to childbirth. Defendants cite Cohen v. Chesterfield County School Board, 474 F.2d 395 (4th Cir. 1973). This case has been reversed at 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974). They also rely on EEOC Dec. No. 70–360 (1969), CCH Emp. Prac. Guide 6084, and EEOC Opinion Letter, November 15, 1966. Both have been nullified by the guidelines enacted by EEOC in 1972 and reported at 29 C.F.R. § 1604, et seq.

The defenses proposed by defendants are not valid defenses to a Title VII action. However, they may be asserted as defenses to a claim under the Equal Protection Clause. They will be discussed at the appropriate time.

## VI.

### EQUAL PROTECTION CLAUSE

Plaintiff contends that, in determining employment benefits, the distinction between childbirth-caused disabilities and all other medical disabilities is an arbitrary and discriminatory classification on the basis of sex and denies her equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution.

The threshold issue is the standard of review to be applied to test the validity of the Board's classification. Although the Supreme Court has considered the question in recent cases, Cleveland Board of Education v. LaFleur, 414 U.S.

632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), and Reed v. Reed, 404 U.S. 71, 92 S.Ct. 23, 30 L.Ed.2d 156 (1971), it remains unclear how sex discrimination fits within the equal-protection doctrine. In *Frontiero* the four members of the Court were willing to hold that sex is a "suspect" classification. However, the majority refused to put sex in this category. In *LaFleur*, the most recent decision, the Court reverted to the standard of "rational relationship to a valid state interest". I similarly do not consider whether sex is a "suspect" classification. The challenged classification is invalid even under the *Reed* test. This test requires the court to scrutinize challenged legislation or administrative classification. The classification must be "reasonable, not arbitrary, and . . . rest upon some ground of difference having a fair and substantial relation to the object of the legislation." Reed v. Reed, *supra* at 76. See also Aiello v. Hansen, 359 F.Supp. 792 (N.D.Cal. 1973).

The effects of pregnancy and pregnancy-related illness are debilitating in much the same way as the physical and mental conditions that are included within the scope of the disability insurance program. The question whether the exclusion of pregnancy-related disabilities from the program is arbitrary or rational depends upon whether pregnancy and pregnancy-related illness substantially differ from the included disabilities.

When any group of citizens are classified and receive treatment different from the rest,

"The Equal Protection Clause requires more of a state law than nondiscriminatory application within the class it establishes. McLaughlin v. Florida, 379 U.S. 184, 189–190 [85 S. Ct. 283, 286, 13 L.Ed.2d 222] (1964). It also imposes a requirement of some rationality in the nature of the class singled out.

\* \* \* \* \* \*

"But the Equal Protection Clause does require that, in defining a class subject to legislation, the distinctions that. are drawn have 'some relevance to the purpose for which the classification is made.' " (citations omitted) Rinaldi v. Yeager, 384 U.S. 305, 308–309, 86 S.Ct. 1497, 1499–1500, 16 L. Ed.2d 577 (1966).

The purpose of the program is not reflected in the legislative history. Sick leave is to compensate teachers for the wage loss they sustain by being unable to work because of illness or injury. This is the only purpose which can be deduced from the statutes. The exclusion of childbirth-related disabilities does not promote this purpose. The economic hardship pregnant women suffer when they cannot work is identical to the hardship of other disabled workers. See generally Aiello v. Hansen, *supra*.

The Sixth Circuit discussed the reality of the situation in LaFleur v. Cleveland Board of Education, *supra*:

"Here, too, we deal with a rule which is inherently based upon a classification by sex. Male teachers are not subject to pregnancy, but they are subject to many types of illnesses and disabilities. This record indicates clearly that pregnant women teachers have been singled out for unconstitutionally unequal restrictions upon their employment. Additionally, as we have observed, the rule is clearly arbitrary and unreasonable in its overbreadth." 465 F.2d at 1188.

Regulations based on sexual classifications should be invalidated unless supported by a valid state interest. Reed v. Reed, *supra*. The denial of sick-leave benefits to women teachers suffering from childbirth-caused disabilities has no relation to the employer's interest.

I am faced with substantially the same situation as the Court in Wetzel v. Liberty Mutual Ins. Co., *supra*. I agree with the Court's holding.

"Pregnancy is the only disability, not within the other exceptions, not covered by the Income Protection Plan. Pregnancy is a condition limited to women. Conditions limited to men, such as prostate troubles, are not excluded, nor is any exclusion provided for a number of illnesses whose incidence among males is greatly predominant (i. e. gout 19 to 1; the Merck Manual, 10th ed. 1961).

\* \* \* \* \* \*

"We must emphasize the distinction made by the guidelines, § 1604.10(b) that it is 'disabilities caused or contributed by pregnancy, miscarriage, abortion, childbirth, and recovery therefrom' which for job-related purposes are to be treated as temporary disabilities. They do not cover leave for child rearing, but only for job disability. No evidence has been presented to us by Defendant as to the average duration of pregnancy disability. Again, we have a difficult time in freeing ourselves from stereotype thinking. . . . We may assume from a general knowledge of the conditions of life, that in the normal or usual pregnancy, the period of disability will be relatively short. There is nothing in this record to show, and nothing in our general experience with life indicates that the job-related incidence of disability for pregnancy is any greater or any less than that for a prostatectomy." 7 FEP Cases at p. 47.

The Board has failed to differentiate pregnancy from other temporarily debilitating conditions. Pregnancy creates less of an administrative problem than do truly unexpected accidents or illness. Heath v. Westerville Board of Education, 345 F.Supp. 501 (S.D.Ohio E.D. 1972). I agree with the District Court's holding in Cohen v. Chesterfield County School Board, 326 F.Supp. 1159, 1161 (E.D.Va.1971), aff'd, 474 F.2d 395 (4th Cir. 1973), aff'd, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974). The sick-leave policy of defendant School Board members:

" . . . denies pregnant women such as [plaintiff] equal protection of

the laws because it treats pregnancy differently than other medical disabilities. Because pregnancy, though unique to women, is like other medical conditions, the failure to treat it as such amounts to discrimination which is without rational basis, and therefore is violative of the [Equal Protection Clause of the Fourteenth Amendment to the United States Constitution]." 326 F.Supp. at 1161.

Sexual stereotypes are no less invidious than racial or religious ones.

"Moreover, since sex, like race and national origin, is an immutable characteristic determined solely by the accident of birth, the imposition of special disabilities upon the members of a particular sex because of their sex would seem to violate 'the basic concept of our system that legal burdens should bear some relationship to individual responsibility. . . .' Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 175 [92 S.Ct. 1400, 1407, 13 L.Ed.2d 768] (1972)." *Frontiero*, 411 U.S. at 686, 93 S.Ct. at 1770, 36 L.Ed.2d at 591.

Defendants argue that their policies are not sexually discriminatory because pregnancy and maternity are *sui generis* and the School District's notice of them is not an invidious classification by sex. They state that "pregnancy is usually voluntary" and thus is not an illness or injury within the scope of ORS 342.-595(1)(a).

I disagree with defendants' arguments. Judge Weber, in his opinion in Wetzel v. Liberty Mutual Ins. Co., *supra*, stated:

"Pregnancy is a natural condition, it is an expectable condition, it is a statistically foreseeable condition, and ultimately it is a necessary condition. It is a condition limited to women, not by statutory law or custom, but by biological law. If three-eighths of our employee working force consists of women, and their age group necessarily overlaps in large measure the childbearing age group, pregnancy is cer-

tain to occur in a statistically expectable number of employees. . . .

"Because pregnancy is a natural, expectable, and societally necessary condition, which is certain to occur in a statistically predictable number of women in the labor force, we see no merit in Defendant's argument that it may be excluded from equality of treatment in conditions and benefits of employment because it is a voluntary condition. Whether voluntary or not, it occurs with certainty and regularity. . . ." 7 FEB Cases at 44.

The regulation penalizes the female school teacher for being a woman and must be condemned on that ground.

The classification also discriminates because it requires the plaintiff to choose between employment and pregnancy. Plaintiff's interest in having children is a right entitled to the protection of the Fourteenth Amendment. Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); Buckley v. Coyle Public School System, 476 F.2d 92 (10th Cir. 1973). *Wetzel, supra* at 45.

## VII.

## COSTS

It has been urged that the administrative burden and cost of providing sick-leave benefits for pregnancy-related disabilities provides a justification for denying these benefits. This is not a defense to a Title VII action. 29 C.F.R. § 1604.9(e) provides:

"(e) It shall not be a defense under Title VIII [sic] to a charge of sex discrimination in benefits that the cost of such benefits is greater with respect to one sex than the other."

The problem was considered in Aiello v. Hansen, *supra*. The Court held:

"Clearly it is a legitimate interest for a state to attempt to preserve the fiscal integrity of its programs. [citations omitted] More particularly, a state may properly seek to make a

program self-sustaining and paid for by those who use it rather than by tax revenues drawn from the public at large. [citations omitted] 'But a State may not accomplish such a purpose by invidious distinctions between classes of its citizens.' [citations omitted] Thus, the fact that excluding pregnancy-related disabilities saves costs is only the first step; the state also must show that the exclusion of pregnancy-related disabilities rests upon some ground of difference having a fair and substantial relation to the object of the legislation.

"  *    *    *    *    *    *

"The increased costs could be accommodated quite easily by making reasonable changes in the contribution rate, the maximum benefits allowable, and the other variables affecting the solvency of the program.  .  .  .

"Moreover, regardless of the effect the inclusion of pregnancy-related disabilities would have, these disabilities cannot be excluded merely because the cost of including the entire group might be prohibitive. While some women suffering pregnancy-related disabilities will have large claims, not all pregnant women will.

"  *    *    *    *    *    *

"Similarly, by excluding all pregnancy-related disabilities on the grounds that these claims will be large, the state denies pregnant women benefits on the basis of generalities and stereotypes contrary to the requirements of the equal protection clause.

"Like the forced maternity leave in *Heath*, the denial of benefits for pregnancy-related disabilities seems to have its roots in the belief that all pregnant women are incapable of work for long periods of time, and therefore, they will submit large disability claims. The truth of this belief is certainly suspect. As the *Heath* court pointed out, the treatment of pregnancy in other cultures shows that much of our society's views concerning the debilitating effects of pregnancy are more a response to cultural sex-role conditioning than a response to medical fact and necessity." *Aiello, supra* at 798–799.

The policy of denying sick-leave benefits for all childbirth-caused disabilities may make administrative burdens lighter, but other values must be considered. It is true that some may take advantage of the benefits. This applies to every illness or injury. It cannot be the basis for refusing sick-leave benefits for all childbirth-caused disabilities. To do so is discrimination. It has been said:

"The establishment of prompt efficacious procedures to achieve legitimate state ends is a proper state interest worthy of cognizance in constitutional adjudication. But the Constitution recognizes higher values than speed and efficiency. Indeed, one might fairly say of the Bill of Rights in general, and the Due Process Clause in particular, that they were designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy which may characterize praiseworthy government officials no less, and perhaps more, than mediocre ones.

"Procedure by presumption is always cheaper and easier than individualized determination. But when, as here, the procedure forecloses the determinative issues of competence and care, when it explicitly disdains present realities in deference to past formalities, it needlessly risks running roughshod over the important interests of both parent and child. It therefore cannot stand." Stanley v. Illinois, 405 U.S. 645, 657, 92 S.Ct. 1208, 1215, 31 L.Ed. 551 (1972).

The administrative machinery to process leaves granted for other illnesses is in existence. These administrative procedures can readily be adapted to apply to pregnancy cases. The plaintiff has met her burden of demonstrating that the balance of hardships weighs in her favor. Green v. Waterford Board of Education, 473 F.2d 629 (2nd Cir.

1973); Bravo v. Board of Education of City of Chicago, 345 F.Supp. 155 (N.D. Ill.E.D.1972); Williams v. San Francisco Unified School District, 340 F.Supp. 438 (N.D.Cal.1972). Pregnancy-related disabilities cannot be excluded because of the cost of adding these benefits.

## VIII. ·

### CONCLUSION

 To defendants' intentional violation of Title VII the only defense urged is a good-faith reliance on administrative interpretation. I find this to be insufficient. In the Civil Rights Act of 1964, the term "intentional" means that defendants intended to do what they did, not that there was a willful and deliberate intention to violate the law. Kober v. Westinghouse Electric Corp., 480 F.2d 240, 246 (3rd Cir. 1973). Defendants have intentionally engaged in an unlawful employment practice in violation of Title VII of the Civil Rights Act of 1964. They have discriminated on the basis of sex by denying sick-leave benefits for childbirth-related disabilities.

Plaintiff has also shown a violation of the Equal Protection Clause of the Fourteenth Amendment. In determining sick-leave benefits, defendants' distinction between childbirth-caused disabilities and other medical disabilities is arbitrary and irrational. The distinction serves no legitimate interest of the Board of the School District. It penalizes the female teacher for asserting her right to bear children. Accordingly, it is

Ordered that:

1) Defendant Lake Oswego School District No. 7 is dismissed.

2) Defendants are guilty of an Unfair Labor Practice under Title VII of the Civil Rights Act of 1964.

3) Defendants' refusal to grant plaintiff the use of her accrued sick leave for her pregnancy-related disability was an invidious discrimination on the basis of sex in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

4) Defendants shall grant plaintiff sick-leave benefits.

5) Defendants and their successors in office, agents, and employees are enjoined from refusing to grant sick leave for pregnancy-related disabilities.

6) Plaintiff is awarded costs and reasonable attorneys fees under the provisions of 42 U.S.C. § 2000e–5(k). Plaintiff is to submit to the Court a time sheet and affidavit setting forth a statement by plaintiff's attorney of the time expended in preparation of this action.

7) Plaintiff shall submit a form of Judgment Order.

The foregoing shall constitute findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).