Gloria **BRADLEY**

v.

**H. J. COTHERN, Individually and in his official capacity as Superintendent of the Vidor Independent School District, et al.**

**Civ. A. No. 7840.**

United States District Court, E. D. Texas, Beaumont Division.

Nov. 19, 1974.

Robert E. Hall, Dixie, Wolf & Hall, Houston, Tex., for plaintiff.

Ronald D. Cohen, Houston, Tex., for defendants.

## MEMORANDUM OPINION

STEGER, District Judge.

The plaintiff, a public school teacher, brings this civil action challenging the termination of her teaching contract by the Vidor Independent School District and the refusal by the District to reinstate her to a teaching position following the birth of her child. Jurisdiction is asserted under the Fourteenth Amendment to the United States Constitution, pursuant to 28 U.S.C.A. § 1331, as well as 42 U.S.C.A. § 1983 pursuant to 28 U.S.C.A. §§ 1343(3) and 1343(4). Relief is also sought under the Federal Declaratory Judgment Act, 28 U.S.C.A. §§ 2201 and 2202 and the amount in controversy is alleged to exceed the sum of $10,000.00. The plaintiff asks for a declaratory judgment, reinstatement and actual and compensatory damages.

The plaintiff named as defendants the Vidor, Texas Independent School District, certain named members of the Board of Trustees and the Superintendent of the District. The named individuals are sued in their individual as well as their representative capacities. Since the Vidor Independent School District is, under Texas law, in the nature of a municipality,[1] jurisdiction does not lie under § 1983 against the District.[2] Nevertheless, since the plaintiff plead general federal question jurisdiction and alleged damages in excess of $10,000.00, the District is within the Court's jurisdiction. In any event, it is established that the appropriate named school officials are persons within § 1983.[3]

## BACKGROUND

The plaintiff, Gloria Bradley, was first employed in the Vidor District for the 1960 school year and continued teaching there until 1964 when she left for employment in another school district. After an absence of five years she returned to the Vidor District in August of 1969, and taught art at Vidor High School. Mrs. Bradley is certified by the State of Texas to teach both art and English.

During the month of March, 1970, the plaintiff learned that she was pregnant and would be expecting her second child in either August or September. When this fact was confirmed, she went to see her principal, Harry Heickman, to inform him of her pregnancy because it was required in the policies of the District[4] and further because she wanted him to get the news first hand, and not from some other source. At this meeting the principal did not ask the plaintiff to submit a written resignation, because he felt that she might recover in time to begin the school year. Mrs. Bradley and Mr. Heickman had a discussion concerning the possibility of having a substitute teach Mrs. Bradley's classes for the first few weeks of the 1970–71 school term until she could resume her full-time duties. Previous to this meeting, Mr. Heickman had recommended the plaintiff for a new two year contract describing her as a "strong" teacher.

Thereafter, on March 16, 1970, the Board of Trustees of the District at its regular meeting approved a two year contract for Mrs. Bradley. Pursuant to this action by the Board, a written contract was entered into on April 15, 1970, between Mrs. Bradley and the District for the school years 1970–71 and 1971–72.[5] Mrs. Bradley finished her teaching assignment for the 1969–70 year. Her

---

1. Harkless v. Sweeny Independent School District, 427 F.2d 319 (5th Cir. 1970).

2. City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973).

3. United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach, 493 F.2d 799 (5th Cir. 1974).

4. Policy Number Five of the School District provided as follows:

"All full-time female employees must file a resignation as soon as they know they are pregnant; the Administration is allowed to terminate their employment at the most logical time."

5. This contract contained a small change in the wording of pregnancy policy:

"All full-time female employees must file a resignation as soon as they know they are pregnant; the Administration is al-

principal, Mr. Heickman, left the District at the end of the Spring 1970 term.

In July, 1970, the plaintiff went to see the Superintendent, Dr. H. J. Cothern, to speak with him about various matters, including the plan she discussed with Principal Heickman in March to have a substitute begin the Fall semester. When Dr. Cothern saw that she was pregnant, he showed her the Board maternity policy [6] and asked for her to resign immediately, but she declined. At this meeting Dr. Cothern told her that she could have a job in the Spring if there was an opening. Mrs. Bradley informed him that she had conferred with another teacher in the District, Gayle Keramian, and Mrs. Keramian was available to substitute for the first two or three weeks of the Fall semester. Dr. Cothern said this would not be acceptable and restated his position that she had to resign.

This was one of those situations where the conflicting needs and plans of both parties were on a collision course. Mrs. Bradley on one hand was recently divorced, had one child at home, and was expecting another child in a month. In short, she needed the job to support herself and her family. Further, she felt that she had worked out an acceptable plan with her principal. Dr. Cothern, on the other hand, had only been Superintendent for two months at this time and school was scheduled to begin on August 20th. Mr. Heickman had not advised him of Mrs. Bradley's condition. Further, the District had an application on file from a qualified art teacher at a time when it was difficult for the Vidor District to attract qualified teachers.

Subsequent to this meeting, the plaintiff on August 1st wrote a letter to the Secretary of the School Board relating her conversation with Dr. Cothern and explaining her position. On August 3rd, Dr. Cothern sent Mrs. Bradley a letter advising her that he was recommending the termination of her contract. In the letter he stated, "This action is based on your failing to submit a resignation as requested in the contract policies of this District." On that same day the Board met and after considering the plaintiff's letter and Dr. Cothern's recommendation, they voted to terminate her contract immediately. On this date the Board consisted of Bill Harland, Tommie Rainbolt, Ralph White, Rollie Burr, G. T. Sharp, A. R. Simino and Louis Smith, with Mr. Harland and Mr. Simino being absent at this meeting. On August 4th, Dr. Cothern communicated the Board's decision to the plaintiff by letter.

Between the time of the plaintiff's mid-July meeting with the Superintendent and the August 3rd termination, Mrs. Bradley and her mother met with Dr. Cothern. He again reiterated his previous position that she must resign, but he did offer night employment and substitute teaching jobs when they were available in her fields. She told him that she would like to think about his offer, but that she was really in need of full-time employment.

Mrs. Bradley's child was born on September 1, 1970. Thereafter in early October, 1970, she called Dr. Cothern and told him that she would like to resume teaching. During this conversation she informed him that she would be unable to accept the night and substitute teaching jobs. In November, the plaintiff obtained full-time employment at an art supply store during the day and a business college at night.

At the end of the 1970–71 school year two art teachers resigned at Vidor High School. The first to resign was Susan Reed, the teacher who had taken Mrs. Bradley's place at the high school. Prior to her resignation, Susan Reed visited the art supply store and told the plaintiff of her plan to resign. In response to this, Mrs. Bradley called Dr. Cothern within two days of the time Ms. Reed

---

lowed to terminate their employment at the most *appropriate* time as determined by the school administration."

6. See Footnote 4, supra.

tendered her resignation and asked for her job. Dr. Cothern informed her that the position had already been filled by a transfer from the junior high school. In July, 1971, the second art teacher, Ruby Hughes, resigned. She told the plaintiff the day when she would be mailing in her resignation and the plaintiff called Dr. Cothern on the same day he received it to apply for the position. Dr. Cothern told her that this position was likewise filled by a transfer from the junior high. The transfer of these two teachers meant that two positions were left vacant in the junior high school. One position was phased out, but the other was filled by a teacher from outside the District and the plaintiff was not considered for this opening. The following year in August, 1972, Mrs. Bradley obtained her present employment teaching art in the Beaumont Independent School District.

### LeFleur and Cohen

The United States Supreme Court on January 21, 1974, decided two cases which are pertinent to the merits of this cause. These were Cleveland Board of Education v. LaFleur and Cohen v. Chesterfield County School Board,[7] and they were consolidated for appeal purposes. Both actions involved challenges by public school teachers to the mandatory maternity leave policies of their respective districts. Jo Carol LaFleur's school district (Cleveland) required every pregnant school teacher to take a leave of absence without pay beginning five months prior to the expected birth of her child. Teachers in the Cleveland District were not promised re-employment but were given priority in reassignment. Further, a teacher was not eligible to return to work until the semester following the time when her child reached the age of three months.

Susan Cohen in the second case, challenged the maternity policies of the Chesterfield County School District. In this District the teacher was required to leave work at least four months prior to birth, and notice of pregnancy had to be given six months before the expected date of birth. The teacher was guaranteed re-employment the school year following the time her physician certified she was physically fit.

The Supreme Court held that both mandatory leave rules violated the Due Process Clause of the Fourteenth Amendment because they created an irrebutable presumption that every teacher was incapable of continuing to work and they did not contain a provision for an individualized determination. Further they said that these rules unduly impinged on the teacher's right to decide whether to bear a child. On the other hand, the Court held that the advance notice provisions in the Chesterfield policies were constitutionally permissible and would satisfy the District's valid state interest in preserving the continuity of education.

The Court approved the return rules of the Chesterfield County District as having no constitutional infirmities:

"In that school system, the teacher becomes eligible for reemployment upon submission of a medical certificate from her physician; return to work is guaranteed no later than the beginning of the next school year following the eligibility determination. The medical certificate is both a reasonable and narrow method of protecting the school board's interest in teacher fitness, while the possible deferring of return until the next school year serves the goal of preserving continuity of instruction. In short, the Chesterfield County rule manages to serve the legitimate state interests here without employing unnecessary presumptions that broadly burden the exercise of protected constitutional liberty." [8]

However, the Court held that the portion of the Cleveland return rule requir-

---

7. 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974).

8. *Id.* at 650, 94 S.Ct. at 801.

ing a teacher to wait until her child was three months old before she returned to teaching was wholly arbitrary and irrational and violated the Due Process Clause. The Court stated that the age limitation "unnecessarily penalizes the female teacher for asserting her right to bear children." [9]

Prior to the Supreme Court's decision in the above cases, the State of Texas passed new maternity leave legislation [10] that applies to public school districts in the State. Although the legislation became effective June 14, 1973, and therefore inapplicable to the case at bar, it does show the present policy followed by the Vidor District. In summary, the Act provides that whenever an employee's condition interferes with the performance of regular duties, the employee is to be given a leave of absence. While on a leave of absence, the employee's contract cannot be terminated by the district. When the teacher is ready to return to work, she must notify the superintendent thirty days prior to the expected date of return and submit a doctor's statement of physical fitness. Under this statute the teacher is given assignment at the school where she previously taught, subject to job availability. However, she is guaranteed re-employment no later than the beginning of the next term.

The Court will now turn to an examination of the facts of the instant case in light of the *Cohen* and *LaFleur* cases. The Vidor Independent School District's written pregnancy policies required a teacher to submit her resignation as soon as she found out she was pregnant, and the administration would terminate her at the most logical time.[11] Further, Contract Policy Number Three provided as follows:

"The employee, in case of resigning, will present the resignation in writing to the immediate supervisor, at least thirty (30) days before the expected termination of contract."

There were no written return policies of the District during the period in question, unlike both districts in *Cohen* and *LaFleur*.

The Court is of the opinion that Mrs. Bradley's March, 1970 notification to Mr. Heickman that she was pregnant satisfied her obligations with regard to the above quoted policy. Mr. Heickman was her immediate supervisor in the high school and she informed him as soon as she was sure she was pregnant. When she notified him of her condition, he did not demand a written resignation at that time. The testimony demonstrated that this was often the practice followed in the District. Mrs. Bradley was justified in relying on her supervisor to communicate this fact to the Superintendent if he felt it necessary.

■ Turning now to the plan involving a substitute teacher, the Court is of the opinion that Mrs. Bradley could not rely on this one conversation with her principal so as to bind the District to hold her job open for her and employ a substitute teacher to teach her classes until the birth of her child. Whatever the extent of her conversation with Mr. Heickman in March of 1970, it is apparent that it did not form a concrete plan in Mr. Heickman's mind.

■ In administering the maternity policy, the Vidor District did not employ arbitrary cutoff dates, but instead allowed the teacher to continue teaching as long as she was able. The requirement that the teacher submit a resignation when she learned she was pregnant was used by the District as a notification device to promote continuity of instruction by allowing school officials to plan for the coming semester. In this way the leave policy was constitutionally administered.

9. *Id.*

10. 1 Vernon's Tex.Codes Ann.Education Code § 13.905 (Supp.1973).

11. See Footnote 4, supra.

 However, the Court must also examine the return policies of the District to be able to properly evaluate whether the actions of the Vidor School District placed too great a burden on Mrs. Bradley's constitutional rights. While it is constitutionally permissible for a school district to require a teacher to discontinue her services when she is physically unable to continue, and then defer her return for a reasonable period of time following the birth of her child, it is the view of this Court that it is incumbent upon the District to give her a priority right to return to teaching when the first available position in her field becomes vacant. To do otherwise would intrude too far into a teacher's personal choice in matters of family life, which has long been held to be protected by the Due Process Clause of the Fourteenth Amendment.[12] This intrusion could not be justified by any legitimate state interest.

As noted previously, the Vidor District had no written return rules. The normal practice in the District was for a teacher to resign or take a leave of absence when she learned she was pregnant and then notify the administration when she desired to return. She would then be placed in the District if there was a vacancy in her field. A teacher on a leave of absence did not have an enforceable right to return to the District, but she was normally given the first available opening in her field after she was physically able to return.

Mrs. Bradley's case was treated differently by the District. Although Dr. Cothern knew from his conversation with the plaintiff in October, 1970, and in June and July of 1971, that she desired to return to full-time teaching in the District, she was not considered for either of the high school vacancies or the vacancy in the junior high. Dr. Cothern gave several reasons for not considering the plaintiff for these positions. First, he said he did not know that she was interested in returning to the District because she had rejected his offers of temporary employment and substitute teaching jobs.[13] Although it is admirable that the District made these offers of part-time employment, it is clear that they were insufficient to meet her needs, and Mrs. Bradley did not lose her return rights by declining them. The adult basic education classes paid only twenty dollars a week and substitute teaching could not provide her with a stable monthly income. Mrs. Bradley was the sole supporter of herself and her two children, and therefore, it was imperative that she have full-time employment.

 A second reason offered by Dr. Cothern for not considering the plaintiff for these openings was that she failed to request a leave of absence, and therefore she was placed on the same footing with a new applicant. This was an untenable position for the defendants to take. There was no written policy that would have allowed a leave of absence. As Dr. Cothern admitted, this was an unwritten policy that Mrs. Bradley was supposed to comply with, and this Court concludes that it would be an onerous burden to place on the plaintiff to force her to totally relinquish her contract rights because she failed to request a leave of absence that was not even provided for in the Board policies.

 Although the plaintiff refused the offers of temporary employment, she did not decline the offer made by the Superintendent to give her the next available opening in her field. Although the practice of the District in the past was to give teachers who wished to return the first available position, this would not be controlling in this case be-

---

12. Cleveland Board of Education v. LaFleur, supra at 639, 94 S.Ct. 791; Hutchison v. Lake Oswego School District, 374 F.Supp. 1056 (D.Or.1974).

13. October 24, 1973, Deposition of H. J. Cothern at pages 64 and 107.

cause the Superintendent knew that Mrs. Bradley desired to return to full-time teaching with the District yet she was denied this opportunity. The Court concludes that the return policies of the District violated the Due Process Clause of the Fourteenth Amendment because they unnecessarily penalized the plaintiff herein for asserting her right to bear children.

Because the Court has found Mrs. Bradley's Due Process rights have been infringed by the actions of the defendants, it is unnecessary to pass upon her contention that the defendants violated her equal protection rights by treating pregnancy differently from other illnesses.

*Ripeness and Exhaustion of Administrative Remedies*

The defendants argue that Mrs. Bradley is estopped to assert her rights in this case because she avoided bringing her claim to the attention of the authorities in time for them to give it mature consideration. Further, the defendants contend that Mrs. Bradley's claim was never finally considered by the School Board and therefore was not ripe for adjudication.

■ At the outset, it is important to note that exhaustion of administrative remedies or state judicial remedies is not required as a prerequisite to asserting a cause of action based on § 1983. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Chisley v. Richland Parish School Board, 448 F.2d 1251 (5th Cir. 1971); Hobbs v. Thompson, 448 F.2d 456 (5th Cir. 1971). Apart from this, the Court does recognize that before a federal court has jurisdiction in a case such as this, there must be a final institutional decision.[14]

In the present case the decision of the Vidor School Board was not lacking in finality. The Board was fully informed of all the facts surrounding Mrs. Bradley's case through her letter to the secretary and statements by the Superintendent. Having these facts in mind, the Board voted to terminate her contract on August 3, 1970, and this was a final decision. As the defendants admit in their posthearing brief, it would be patently absurd to require the plaintiff at this juncture some four years later to go back to the Board to present her claim. Whether or not the plaintiff should have presented her plan to have a substitute teacher to the Board for their consideration has no bearing on the Court's holding that she had a right to return to teaching in the District following the child's birth.

The defendants cite two cases for the proposition that the plaintiff did not do equity so she is precluded from seeking equitable relief in this case. Both of these cases are clearly distinguishable from the case at bar. In Ford v. Buffalo Eagle Colliery Co.,[15] the Court held the plaintiffs were barred by the clean hands doctrine from seeking equitable relief because they were guilty of making false and fraudulent representations in the sale of stock. In the second case cited by the defendants, New York Football Giants, Inc. v. Los Angeles Chargers Football Club, Inc.,[16] the plaintiff football team had been guilty of devious and deceitful conduct in the signing of a star football player. In this case there was no fraudulent or deceitful conduct on the part of Mrs. Bradley. She honestly felt that she had a plan arranged

14. See Wood v. Alamo Heights Independent School District, 433 F.2d 355 (5th Cir. 1970); Stevenson v. Board of Education of Wheeler County, Georgia, 426 F.2d 1154 (5th Cir. 1970). However, in the *Stevenson* case the Court said that it would not be necessary to refer the case back to the Board because the complaints went to the superintendent level and the Board members testified at trial that they could have sustained the suspension of the students.

15. 122 F.2d 555 (4th Cir. 1941).

16. 291 F.2d 471 (5th Cir. 1961).

with her principal that would have allowed her to have a substitute teach the first few weeks of school. She never attempted to conceal the fact that she was pregnant, but notified her immediate supervisor, Mr. Heickman, of this fact as soon as she knew for sure that she was pregnant. Therefore, the Court finds that she is not barred from seeking equitable relief.

### Conclusion

For the reasons stated above, the Court is of the opinion that the plaintiff, Gloria Bradley, is entitled to appropriate injunctive relief designed to effect her reinstatement as a teacher employed by the Vidor Independent School District at the beginning of the Spring semester in 1975.[17]

The plaintiff's request for declaratory relief will be denied because the District is no longer following the policies of which the plaintiff is complaining. The question has now become moot and this Court is not empowered to decide moot questions. North Carolina v. Rice, 404 U.S. 244, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971).

The plaintiff's damages and attorney's fees will be determined at a separate hearing to be held at 1:30 o'clock P.M. on December 17, 1974, at Beaumont, Texas.

All motions filed by the defendants seeking a severance of the plaintiff's claims against various defendants, seeking to compel the plaintiff to add additional parties, and seeking dismissal of the plaintiff's claims against certain individual defendants are hereby overruled. The defendants named in this suit are appropriate and sufficient to permit the Court to grant the relief to which the plaintiff is entitled.

---

17. Although it is true that reinstating Mrs. Bradley to the District might revive some antagonisms, it is clear that this would not be a proper basis for denying such relief. Sterzing v. Fort Bend Independent School District, 496 F.2d 92 (5th Cir. 1974).