**Alice C. ECKROTH, Plaintiff,**

v.

**FLASHER PUBLIC SCHOOL DISTRICT NO. 39, and Walter Meyer, Reuben Kvar, Joseph K. Vetter, Darryl Frederick, Aurora Dressler, and Earl LaDuke, in their official capacity as members of the School Board of Flasher Public School District No. 39, a Public Corporation, Defendants.**

No. A77–1030.

United States District Court, D. North Dakota, Southwestern Division.

Sept. 9, 1977.

---

Daniel J. Chapman, Bismarck, N. D., for plaintiff.

Malcolm H. Brown, Bair, Brown & Kautzman, Mandan, N. D., for defendants.

## MEMORANDUM and ORDER

VanSICKLE, District Judge.

Plaintiff claims that she has been discriminated against by reason of her sex in violation of Title 42, United States Code, Section 2000e-2:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . .; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex . . .."

The gravamen of the charge is that she was denied employment as a primary principal by Flasher Public School District No. 39, solely because of her sex.

Flasher is a North Dakota city with a population of 467.

Flasher Public School District No. 39 is an employer within the meaning of 42 U.S.C. § 2000e(b). *Hutchison v. Lake Oswego School District*, 374 F.Supp. 1056 (D.C.D.Or.1974) p. 1056 at 1059. Alice Eckroth is an employee within the meaning of 42 U.S.C. § 2000e(f). *Hutchison*, supra.

This Court has jurisdiction under 42 U.S.C. § 2000e-5(f)(3), and 42 U.S.C. § 2000e-5(f)(1) is also satisfied in that the requisite notice of right to sue was given (Exhibit 3).

At the time of trial the Plaintiff was 65 years old, approximately five feet tall, weighing about 250 pounds, and evidencing difficulty in walking. At the time of her employment by the Flasher Public School District she had a Bachelor and a Master degree in Education and had approximately twelve hours of credit beyond her Master's degree. From 1955 to 1970 she had taught first and third grades at St. Mary's Grade School in Bismarck, North Dakota, and in the course of her entire teaching experience had some experience teaching junior high school mathematics. In 1970 she applied for a teaching position in the Flasher School System. At that time she suggested to the Superintendent that she might be interested in the position of primary school principal, but she did not formally apply for it, and she did accept a teaching position for the third grade for the 1970–71 school year. In the 1971–72 school year she again taught third grade. Toward the end of the 1971–72 school year she was offered a position as a special education teacher. This position would have compelled her to leave her self-contained classroom situation and to move between the two schools in the system in order to handle students in both schools, which were situated three city blocks apart. She elected not to accept the position, and gave as her reason at the trial that she did

not want to get in and out of the car to drive that far. She served again as third grade teacher during the 1972–73 school year. In March of 1973, she was notified in compliance with North Dakota Statute that the Board was contemplating non-renewal of her contract. She requested a hearing and appeared with a representative of the North Dakota Educational Association as her representative at that executive session. According to her representative at that executive session, a Mr. Forester, the reasons discussed included the need for staff reduction (from two third grades to one third grade); the possibility that she might have difficulty going to higher grades where increased discipline control was needed; and problems of her mobility when doing playground duty. According to the testimony of administrative officers she had problems of discipline arising out of the sedentary nature of her teaching techniques, and these had been discussed with her. According to one School Board member who met with her in the executive session where the contemplated non-renewal was discussed, non-mobility and related disciplinary problems, and staff reduction, and concern by the Board members that she would not be able to exercise sufficient leadership to make effective use of a Teacher's Aide, were all discussed with her. The "leadership" problem was really an observation by the Board members that the Plaintiff was "domineering". That is, she lacked administrative finesse and adaptability.

She was reemployed as a fourth grade teacher for the 1973–74 school year, but no Teacher's Aide was assigned to her. At the conclusion of that year, and on March 19, 1974, she was notified that the School Board was again contemplating non-renewal of her contract. About the same time, that is in March of 1974, Mr. Kraft, who was suffering from ulcers, gave notice of his resignation as primary principal and teacher of mathematics, effective at the end of the school year. Again, Mrs. Eckroth requested a hearing in executive session of the Board, and again NDEA representative Wade Forester was present to plead her cause at the hearing. Mr. Forester recalled, after reviewing the notes of the report made to the NDEA, that the Board and Mrs. Eckroth discussed the fact that she would have to move to a higher grade, whether she continued as a teacher and they reduced the number of fourth grades, or whether she was carried as a primary principal who filled the mathematics positions in the Junior High School. They also discussed the Board's fear, based on their experience with her, that she did not have the administrative abilities to handle a Teacher's Aide. They discussed with her her excessive weight, health problems and "handling students and those kind of things" (testimony of Mr. Forester). Mr. Forester also testified that while he defined his mission as dealing only with the contemplated non-renewal of the teaching contract, the conference did get into discussion of her application for primary principal. The Board's feeling that the teacher could not continue was so strong that despite a strongly worded letter of protest to the Board from the Professional Rights and Responsibilities Commission of the NDEA (Exhibit 8), the School Board held to its decision that it could not renew the Plaintiff's contract. That decision, of course, rendered her application for a principalship moot.

In June 1974, before another principal could be found, Mr. Kraft, without any urging by the administration, elected to reverse his decision to resign, and reapplied for his prior position. Upon receipt of that application the School Board, having prior experience with him, and knowing his level of administrative performance, elected to rehire him.

Names and positions of various persons at various times and, separately, the weight of the Plaintiff at various times became important as the evidence unfolded. To ease my handling of that material, I used this schedule:

| SCHOOL YEAR | SUPERINTENDENT | 7 & 8 GRADE MATH PRIMARY PRINCIPAL | ECKROTH WEIGHT | GRADE TAUGHT |
|---|---|---|---|---|
| 1970–71 | Johnston | Vetter | 250 lbs. | 3rd |
| 1971–72 | Johnston | Vetter | 250 lbs. | 3rd |
| 1972–73 | Johnston | Kraft | 200 lbs. | 3rd |
| 1973–74 | Johnston | Kraft | 185 to 200 lbs. | 4th |

The case was tried in the usual order of trial for civil rights cases. That is, the Plaintiff established a prima facie case by showing:

1. Plaintiff is one of a statutory minority—female.
2. Plaintiff applied for and was educationally qualified for the principal's position by holding a B.S.E. and M.E. and 12 additional credit hours of training.
3. Plaintiff was rejected despite her qualifications.
4. The employer continued to seek applicants after her rejection.

See: *United States v. Hazelwood School Dist.*, 534 F.2d 805 (8th Cir. 1976) at 814, and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 at 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

The evidence is clear that long before the 1974 opening appeared, the School Board was dissatisfied with Mrs. Eckroth's performance. The reasons for the Board's dissatisfaction are consistent and continue throughout the period of Mrs. Eckroth's employment. She was informed and knew of the areas of concern throughout her employment. The problems were:

1. She was a woman of reduced mobility. Witness her testimony that when she was offered a chance to work in special education—her specialty—she turned it down because it involved her leaving a self-contained classroom and going to departmentalized teaching, and involved her "driving" three blocks between two schools. Yet mobility is one thing that the combined 7th and 8th grade mathematics teacher and primary principal needed.
2. Whether because of reduced mobility or for other reasons, she had disciplinary problems in her primary classes. This factor had been a matter of discussion with her several times. Since discipline problems generally increase as the students become older, this was a factor that the Board very properly considered.
3. Her administrative potential, as observed by the administrators and the Board was open to question, and was discussed with her. In both conferences dealing with contemplated non-renewals, the likelihood that the school system would have to go to Teachers Aides, and Mrs. Eckroth's ability to cope with that classroom situation was discussed with her.
4. There became available to the Board, after the Plaintiff had been terminated as a teacher, an opportunity to reemploy the previous 7th and 8th grade mathematics teacher and primary principal, thus filling the vacancy which existed, with a person whose capacity to do the job had been tested and found satisfactory by the Board.

Plaintiff vigorously argues that because the principal (Kraft) did not have his Bachelor of Education when he was employed as teacher-principal in 1972, and because he did not get that degree until the summer of 1975 (after Mrs. Eckroth was discharged and Mr. Kraft was rehired as principal), clearly Mr. Kraft was not as well qualified as Mrs. Eckroth and, therefore, the decision had to be based on sex discrimination. But, under applicable rules of the North Dakota Department of Public Instruction, Mr. Kraft was conditionally qualified to take the job when he got it the first time, and that conditional qualification was still in existence when he took it the second time, because the letter of conditional qualification did not require final compliance

with stated educational qualifications within a specified time (Exhibit 5). Unquestionably, on the basis of her past professional successes, and her educational qualifications, the Plaintiff was, if anything, educationally overqualified. The judgment decision as to who could handle the precise position that had to be filled, was a judgment decision that the Board, and only the Board, could make. As Mr. Johnston in his testimony stated:

"This was not a 'man-woman case' and the job did not require a man."

Therefore, I find that the judgment decision to select a man rather than a woman was not made on a sex discrimination basis.

■ There had been touched upon, but not developed in the evidence and briefs, the question of whether superior educational qualifications, standing alone, override all other considerations and mandate the selection of a person who is educationally the best qualified. I hold that educational qualifications are evidence but not proof of superior ability to perform in a given situation. Under Section 15–29–08(10), N.D. C.C., the School Board is given the duty to employ teachers, and under Section 15–29–08(21), N.D.C.C., is given the duty to appoint principals. These are clearly duties wherein the Board is required to make judgment decisions. Nowhere in the statute, nor as a matter of common experience, can that judgment duty be limited to a comparison only of educational qualifications. Therefore, I hold that the School Board had a duty to consider the applicants' educational qualifications, but it also had a duty to consider all other relevant matters affecting the applicant's capacity to perform the job assignment of primary principal and 7th grade mathematics teacher.

Plaintiff's action is dismissed. Defendants shall be entitled to costs.

Counsel for the Defendants will prepare and submit appropriate form of Judgment in conformance with this Order.