Charlene SALE, Plaintiff,

v.

**WAVERLY–SHELL ROCK BOARD OF EDUCATION, Defendant.**

No. C 74–2029.

United States District Court, N. D. Iowa, E. D.

Jan. 8, 1975.

David J. Dutton, Waterloo, Iowa, for plaintiff.

Ivan J. Ackerman, Waverly, Iowa, James R. Snyder and M. G. Hardesty, Jr., Cedar Rapids, Iowa, for defendant.

## ORDER

McMANUS, Chief Judge.

This matter is before the court on defendant's resisted motion to dismiss filed pursuant to Rule 12(b)(6), F.R. Civ.P., on November 12, 1974.

Plaintiff instituted this action under Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e et seq. (Supp. II, 1972). The crux of plaintiff's claim is that by being denied sick leave pay during an absence from work in 1973 for pregnancy, she was discriminated against in the "compensation, terms, conditions, or privileges of employment" on the basis of sex

in contravention of 42 U.S.C. § 2000e–2(a)(1) (1970).[1]

At the time of the incident alleged herein, plaintiff was a teacher employed in the public school system operated by defendant Board of Education. Agencies of local government, such as the defendant, were included within the definition of "persons" who may be "employers" subject to Title VII by § 2(1) of the Equal Employment Opportunity Act of 1972, Pub.L. No. 92–261, 86 Stat. 103, amending 42 U.S.C. § 2000e (1970). It is alleged and not disputed in this motion that defendant is in fact an "employer" within the purview of the Act. 42 U.S.C. § 2000e(b) (Supp. II 1972).

The complaint states that plaintiff has exhausted all administrative remedies with the Equal Employment Opportunity Commission as required by 42 U.S.C. § 2000e–5 (Supp. II 1972). This court thus has jurisdiction over the action under 42 U.S.C. § 2000e–5(f)(3) (Supp. II 1972).

The central issue raised by defendant's motion is whether a cause of action lies under the statute for failure to pay sick leave benefits to women employees whose absence from work is solely caused by normal pregnancy. In arguing that no such cause of action exists, defendant relies on Geduldig v. Aiello, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974), and a subsequent lower federal court ruling in C.W.A. v. A.T. & T. Co., Long Lines Dept. 8 FEP Cases 529 (S.D.N.Y. July 30, 1974).

Plaintiffs in the *Geduldig* case challenged the constitutionality of certain provisions in the California Unemployment Insurance Code as denying equal protection under the Fourteenth Amendment. The provisions in issue created a disability insurance program entirely funded by employee wage deductions to fill interstices in the disability coverage of the general workmen's compensation scheme. Pregnancy was excluded from the definition of disability, though "disability" otherwise included all mental and physical illnesses or injuries. West's Ann.Un.Ins.Code § 2626.

Balancing the State's interest in maintaining a low employee contribution rate against the exclusion of coverage for normal pregnancies, the Supreme Court found the exclusion to be a rational classification. More significantly for the issue at hand, the Court held that a classification based on pregnancy was not invidious discrimination based on sex under the Fourteenth Amendment.[2] 417 U.S. at 496–497, 94 S.Ct. at 2492.

Title VII of the Civil Rights Act of 1964 was the legal basis for relief argued in the *C.W.A.* case. The District Judge rejected a distinction between the question of discrimination under the Equal Protection Clause for a state welfare program and discrimination by an employer in the Title VII context. The court found this distinction to beg the question, which it formulated as "whether disparity of treatment between pregnancy related disabilities and other disabilities can be classified as discrimina-

---

1. Section 2000e–2(a) of Title 42 United States Code provides:
   (a) It shall be an unlawful employment practice for an employer—
   (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
   (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

2. In footnote 20 of its opinion, the Court explicitly stated that a classification distinguishing pregnant women was not per se a sex-based classification. 417 U.S. at 496, 94 S.Ct. at 2492. The Court implicitly so held by utilizing the "rational basis" test for upholding the legislative scheme rather than the "compelling state interest" standard mandated when the classification is inherently suspect because it classifies according to sex. Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973).

tion because of sex (or gender)." 8 FEP Cases at 531. The court held that this question had been answered in the negative in *Geduldig* by the Supreme Court. *Ibid.*

■ However, an opposite conclusion was reached in Vineyard v. Hollister School District, 64 F.R.D. 580 (N.D.Cal. 1974). The Federal District Court there found that the Supreme Court's interpretation of sex discrimination under the Fourteenth Amendment did not preclude a broader interpretation of what Congress intended to prohibit as discriminatory under Title VII. 64 F.R.D. at 585.

■■ This court is inclined to agree with the latter view. Under the Commerce Clause, Congress may prohibit various forms of discrimination by private individuals which it finds adversely affect the flow of interstate commerce. Katzenbach v. McClung, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964) (upholding Title II of the Civil Rights Act of 1964 as applied to restaurants); Heart of Atlanta Motel v. United States, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964) (upholding Title II of the Civil Rights Act of 1964 as applied to places of public accommodation). Congressional power to proscribe private forms of discrimination is also extended by § 5 of the Fourteenth Amendment where Congress finds the prohibition a necessary means to accomplish the enforcement of the Fourteenth Amendment. Katzenbach v. Morgan, 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966); United States v. Guest, 383 U. S. 745, 774, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966) (Brennan, J., concurring and dissenting).

Thus the task before the court is properly to ascertain whether the intent of Title VII is to prevent the exclusion of sick leave pay for pregnancy related disability rather than whether such exclusion would constitute sex discrimination under the Fourteenth Amendment. *See* Katzenbach v. Morgan, *supra,* 384 U.S. at 649, 86 S.Ct. at 1717.

Unfortunately, a clear legislative history to aid in interpreting the meaning of sex discrimination under the Act is virtually nonexistent. Indeed it appears that "sex" was added to the list of "race, color, religion and national origin" as prohibited criteria for discrimination in hopes of making Title VII totally unpalatable to the House. *See* 110 Cong. Rec. 2581 (1964) (remarks of Representative Green). Instead the amended version of Title VII passed the House one day after "sex" was included, and this version subsequently became enacted into law with essentially no debate over the policy considerations underlying the inclusion of sex as an impermissible basis for discrimination. Diaz v. Pan Am. World Airways, Inc., 442 F.2d 385, 386 (5th Cir. 1971); Developments in the Law—Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv.L.Rev. 1109, 1167 (1971); Note, Classification on the Basis of Sex and the 1964 Civil Rights Act, 50 Iowa L.Rev. 778, 791–92 (1965).

The administrative body charged with enforcing Title VII, the Equal Employment Opportunity Commission (EEOC), has issued guidelines interpreting sex discrimination under 42 U.S.C. § 2000e–2. The guidelines specify that:

"Disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth, and recovery therefrom are, for all job-related purposes, temporary disabilities and should be treated as such under any health or temporary disability insurance or sick leave plan available in connection with employment. Written and unwritten employment policies and practices involving matters such as . . . payment under any health or temporary disability insurance or sick leave plan, formal or informal, shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities." 29 CFR § 1604.10(b), 37 Fed.Reg. 6837 (April 5, 1972.

■ An interpretation of the Act by the enforcing agency is entitled to great deference. Griggs v. Duke Power Co., 401 U.S. 424, 434, 91 S.Ct. 849, 28 L. Ed.2d 158 (1971); *Diaz, supra,* 442 F. 2d at 389. At least two lower federal courts have adopted the interpretation of the EEOC guidelines that special maternity leave rules discriminate against women in the conditions of their employment. La Fleur v. Cleveland Board of Education, 465 F.2d 1184 (6th Cir. 1972); Vineyard v. Hollister School District, *supra.* However, other judicial pronouncements have been to the contrary. C.W.A. v. A.T. & T., *supra*; Godwin v. Patterson, 363 F.Supp. 238 (M.D.Ala.1973).

In the absence of a definitive legislative history or judicial precedent, this court believes that the pronouncement made in the EEOC guidelines is the correct interpretation of the Act. The Supreme Court recently noted that "[O]ver the past decade, Congress has itself manifested an increasing sensitivity to sex-based classifications." Frontiero v. Richardson, 411 U.S. 677, 687, 93 S.Ct. 1764, 1770, 36 L.Ed.2d 583 (1973). Congressional cognizance of pervasive sex discrimination is also reflected in the House Report on the Equal Employment Opportunity Act of 1972 which amended Title VII in an attempt to strengthen its effectiveness. 1972 U.S. Code Cong. & Admin.News, p. 2137.

■ Given the growing congressional awareness and concern for sex discrimination, it is reasonable to assume that the purpose of Title VII as a whole is to provide a legal foundation for the principle of nondiscrimination in employment based on sex as well as other suspect classifications such as race.[3] *See Diaz, supra,* 442 F.2d at 386. The Act should thus be liberally construed and "not hampered by a combination of a strict construction of the statute and a battle with semantics." Culpepper v. Reynolds Metals Co., 421 F.2d 888, 891

(5th Cir. 1970). The scope of the Act should not be confined to explicit discriminations based "solely" on sex. Sprogis v. United Air Lines, 444 F.2d 1194 (7th Cir. 1971), cert. denied, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971).

■ Creating a sick leave program that compensates employees during a time of temporary disability except when the disability is caused by pregnancy is the type of discrimination which Title VII is designed to eliminate. Apparently, no other forms of disability, whether of a quasi-voluntary nature or physiologically occurring more frequently in one sex, are similarly excluded from coverage. Since only females are biologically capable of becoming pregnant, denying sick leave pay solely for pregnancy seems clearly to be setting up differentials in the compensation or terms of employment prohibited by the Act. *See* Developments in the Law—Title VII, *supra,* 84 Harv.L.Rev. at 1170–72. In order for women to have the equal employment opportunities and working conditions intended by the enactment of Title VII, employers and consumers of the employer's goods and services must accept as a cost of production whatever increases in sick leave program costs, if any, will ensue by including pregnancy as a disability covered on the same terms as other injuries and illnesses.

■ Pursuant to 28 U.S.C. § 1292(b), the court further finds that this order involves a controlling question of law as to which there is a substantial ground for difference of opinion, and that an immediate appeal from this order may materially advance the ultimate termination of this litigation.

It is therefore

Ordered

1. Denied.

2. This order is certified for immediate appeal as indicated in text.

---

3. The Act does provide exceptions, not argued here, for classifications based on sex, religion or national origin when such a distinction is a "bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise." 42 U.S.C. § 2000e–2(e) (1970).