**1024**

COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, Esther Skipper, Individually and on behalf of all similarly situated Non-Supervisory Female Employees of American Telephone and Telegraph Company, Long Lines Department, Plaintiffs-Appellants,

v.

AMERICAN TELEPHONE AND TELEGRAPH COMPANY, LONG LINES DEPARTMENT, Defendant-Appellee.

No. 461, Docket 74–2191.

United States Court of Appeals,
Second Circuit.

Argued Dec. 9, 1974.

Decided March 26, 1975.

Mary K. O'Melveny, New York City (Cohn, Glickstein, Lurie, Ostrin & Lubell, Jonathan W. Lubell and H. Howard Ostrin, New York City, Kane & Koons, Charles V. Koons, Washington, D. C., of counsel), for plaintiffs-appellants.

Thompson Powers, Washington, D. C. (Steptoe & Johnson, James D. Hutchinson and Kenneth I. Jonson, Washington, D. C., of counsel, Harold S. Levy and Jim G. Kilpatric, New York City), for defendant-appellee.

Linda Colvard Dorian, Washington, D. C. (United States Equal Employment Opportunity Commission, William A. Carey, Gen. Counsel, Joseph T. Eddins, Associate Gen. Counsel, Beatrice Rosenberg and Charles L. Reischel, Washington, D. C., of counsel), for amicus curiae EEOC.

Amicus Brief, urging affirmance, was filed by Alaska Airlines, Inc., and others (Gordon Dean Booth, Jr., Troutman, Sanders, Lockerman & Ashmore, and Robert N. Meals, Jr., Atlanta, Ga., of counsel.)

Amicus Briefs, urging reversal, were filed by International Union of Electrical, Radio and Machine Workers and others (Winn Newman, Ruth Weyand, Marcia D. Greenberger, Joseph N. Onek and Lois J. Schiffer, Washington, D. C., and Irving Abramson, Stephen C. Vladeck, Frank J. Donner, James G. Mauro, Jr., and Robert Z. Lewis, New York City), New York Civ. Liberties Union (Eve Cary, Ruth Bader Ginsburg, Melvin L. Wulf, Kathleen Peratis, American Civil Liberties Union, New York City, Wendy Webster Williams, Equal Rights Advocates, San Francisco, Cal., of counsel), Bellamy, Blank, Goodman, Kelly & Stanley (Mary F. Kelly, Nancy E. Stanley, New York City), New York State Division of Human Rights (Henry Spitz, Gen. Counsel, Ann Thacher Anderson, New York City, of counsel).

Before FEINBERG and MULLIGAN, Circuit Judges, and BRYAN, District Judge.[*]

FREDERICK van PELT BRYAN, District Judge:

This is an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) from an order of the United States District Court for the Southern District of New York (Whitman Knapp, J.) which dismissed the complaint in this action with leave to replead and certified a question to this Court. This Court has allowed the appeal on the question so certified.

The suit, commenced on July 31, 1973, is a class action brought by plaintiffs-appellants Communications Workers of America, AFL–CIO (CWA) and Esther Skipper, under Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000–e et seq.[1] The

---

[*] Frederick vP. Bryan, of the Southern District of New York, sitting by designation.

[1.] 42 U.S.C. § 2000e–2(a)(1) provides, in relevant part:

"(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

complaint alleges that the Long Lines Department of defendant-appellee American Telephone & Telegraph Company (Long Lines) violated Title VII, which prohibits discrimination in employment or between employees on the basis of sex.

The allegations of the complaint as to specific policies and practices of Long Lines claimed to be violative of Title VII are obviously based on guidelines issued by the Equal Employment Opportunity Commission (EEOC), which is the federal agency charged with enforcement of the Act. These guidelines were designed to prohibit disparity of treatment between pregnancy and other disabilities in the employment context. See 29 C.F.R. 1604.10(b).[2] The complaint alleges that Long Lines "has promulgated and maintained policies, practices, customs and usages which limit the employment opportunities of its female employees because of sex by failing and refusing to provide equal rights, benefits and privileges to females under temporary disability due to pregnancy or childbirth or complications arising therefrom, as are made available to its male employees under temporary disability. [Long Lines'] discriminatory practices and policies involve matters such as the commencement and duration of leave, the availability of extensions, the accrual of seniority and other benefits and privileges, reinstatement, and payments under health or disability insurance or sick leave plans. . . ."

Declaratory, injunctive and monetary relief is sought on behalf of all non-supervisory female employees and former female employees of Long Lines, who have been or may be affected by the policies and practices complained of.[3]

The answer admits that under the Long Lines disability benefit plans, sickness and disability benefits are not paid in connection with absences arising on account of "certain conditions attendant to pregnancy, childbirth, or child rearing," but denies that Long Lines' policies and practices constitute sex discrimination in violation of Title VII. The answer includes, among other defenses, a separate defense that any alleged discrimination on the basis of sex arising from failure to include absences relating to pregnancy, childbirth or child rearing in Long Lines' disability plans "is based upon a rational and neutral business justification" under Title VII.[4]

Prior to the dismissal of the complaint below, both sides had conducted a substantial amount of pre-trial discovery. Discovery had not been completed, however, and as yet no depositions have been taken. A motion concerning class action treatment was pending before the district court.

On June 17, 1974, while that motion was *sub judice,* the Supreme Court decided Geduldig v. Aiello, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974), holding that the provisions of a California statutory state-administered system of disability insurance for private employees which excluded from coverage disabilities arising from normal pregnancy did not violate the Equal Protection Clause of the Fourteenth Amendment.

The district court, in the case at bar, then requested briefs and heard argu-

---

2. 29 C.F.R. § 1604.10(b) provides:

"(b) Disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth, and recovery therefrom are, for all job-related purposes, temporary disabilities and should be treated as such under any health or temporary disability insurance or sick leave plan available in connection with employment. Written and unwritten employment policies and practices involving matters such as the commencement and duration of leave, the availability of extensions, the accrual of seniority and other benefits and privileges, reinstatement, and payment under any health or temporary disability in-

surance or sick leave plan, formal or informal, shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities."

3. The complaint also contains appropriate jurisdictional allegations that a complaint was duly filed with the EEOC which gave the required notice of the right to sue.

4. The answer also pleads a counterclaim based on collective bargaining agreements between CWA and AT&T, to which CWA has replied denying liability. The counterclaim is irrelevant to this appeal.

ment on the question of whether the complaint under Title VII should not be dismissed *sua sponte* in the light of *Aiello.*

The opinion of the district court which followed read the majority opinion in *Aiello,* and particularly footnote 20 of that opinion (417 U.S. at 496, 94 S.Ct. at 2492), as "flatly" holding that disparity of treatment between pregnancy-related and other disabilities cannot be classified as sex discrimination under either the Equal Protection Clause or Title VII, absent a showing that such disparity was a mere pretext designed to effect invidious discrimination against the female sex. It concluded that *Aiello* was decisive of the issues raised by the complaint in this case and that therefore as a matter of law the complaint failed to state a claim on which relief could be granted under Title VII.[5] The district court dismissed the complaint solely on that ground, with leave to replead,[6] and certified the following question to this court pursuant to 28 U.S.C. § 1292(b):[7]

" . . . whether *Aiello* has established—for purposes of [this action]—that disparity between the treatment of pregnancy-related and other disabilities does not of itself constitute discrimination on the basis of sex (or gender) within the prohibition either of Title VII or of the Fourteenth Amendment."[8]

We think that the question certified does not adequately pose the issue on this appeal. In essence, what the court below held was that *Aiello* established that the disparity of treatment of pregnancy-related disabilities alleged in the complaint *cannot* constitute discrimination under Title VII unless it is alleged and proved to be a mere pretext designed to effect invidious discrimination against the female sex. The real question posed here is whether *Aiello* required dismissal of the complaint in this action as a matter of law for failure to state a claim on which relief could be granted under Title VII. That narrow

---

5. The district court did not refer to and apparently did not consider any of the factual material obtained through the incomplete discovery conducted by the parties and included in the record on appeal. Though the briefs of the parties and of *amicus curiae* make extended references to such material, it is not relevant on this appeal, which is concerned only with the district court's holding that the complaint on its face was insufficient as a matter of law.

6. Acknowledging that "if principles of 'notice pleading' were to be applied [the complaint] could be read as broad enough to permit proof of the type of 'invidious discrimination' that would justify relief under either the 14th Amendment or Title VII," the opinion nevertheless construed the complaint as alleging "that disparity with respect to pregnancy-related disabilities in and of itself constituted discrimination on grounds of sex (or gender) . . . .." Apparently, leave to replead was granted to permit plaintiffs to assert a claim that the Long Lines policies and practices were mere pretexts designed to effect invidious discrimination against members of the female sex.

7. At the same time as the question of *sua sponte* dismissal was argued in the case at bar, the district court also heard argument on the same question in Women in City Government United, et al. v. The City of New York, et

al., 74 Civ. 304 (S.D.N.Y.). The complaint in that case alleged that a health and hospitalization plan which offered fewer benefits for pregnancy-related conditions than for other medical and surgical problems violated both Title VII and the Equal Protection Clause. The opinion of the district court treated both cases together and reached the same conclusion and certified the same question pursuant to Section 1292(b) in both. In the *Women United* case, however, permission to appeal on the question so certified was denied by the Court of Appeals and the case was remanded to the district court on October 2, 1974. The district court then dismissed the complaint in that action with prejudice. An appeal is presently pending in this court (# 74–2352) from that order. A motion to consolidate that appeal with the interlocutory appeal in the case at bar was denied on October 23, 1974. The appeal has not as yet been heard in this Court.

8. We assume that the Fourteenth Amendment was included in the certified question because the companion action, Women in City Government United, et al. v. The City of New York, et al., decided at the same time, charged violation of both the Equal Protection Clause and Title VII. See n. 7, *supra.* There is no claim of violation of the Equal Protection Clause in the case at bar and we do not pass on any Equal Protection question.

question is the sole question to which we address ourselves.

■ We disagree with the district court's reading of *Aiello*. In our view, *Aiello* is not decisive of the issues raised by this complaint under Title VII and the court below was in error in holding that *Aiello* required dismissal of the complaint as a matter of law.

At the outset of the discussion, it is well to bear in mind the admonition of Chief Justice Marshall in Cohens v. Virginia, 6 Wheaton (19 U.S.) 264, 399–400, 5 L.Ed. 257 (1821):

> "It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated."

Chief Justice Marshall's admonition has been repeated many times since. For example, in Armour & Co. v. Wantock, 323 U.S. 126, 132–133, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944), rehearing denied, 323 U.S. 818, 65 S.Ct. 427, 89 L.Ed. 649 (1945), Mr. Justice Jackson, writing for a unanimous court, stated:

> "It is timely again to remind counsel that words of our opinions are to be read in the light of the facts of the case under discussion. To keep opinions within reasonable bounds precludes writing into them every limitation or variation which might be suggested by the circumstances of cases not before the Court. General expressions transposed to other facts are often misleading."

See also Humphrey's Executor v. United States, 295 U.S. 602, 626, 55 S.Ct. 869, 79 L.Ed. 1611 (1935); United Gas Improvement Co. v. Continental Oil Co., 381 U.S. 392, 404, 85 S.Ct. 1517, 14 L.Ed.2d 466 (1965); United States v. Neifert-White Co., 390 U.S. 228, 231, 88 S.Ct. 959, 19 L.Ed.2d 1061 (1968); Cameron v. Mullen, 128 U.S.App.D.C. 235, 387 F.2d 193 (1967); Irwin v. Simmons, 140 F.2d 558 (2d Cir. 1944); NLRB v. Cities Service Oil Co., 129 F.2d 933 (2d Cir. 1942); Commissioner of Internal Revenue v. Marshall, 125 F.2d 943 (2d Cir. 1942).

■ These cautions apply with particular emphasis to footnotes or other "marginalia" in Supreme Court opinions, which should be read "within the context of the holding of the Court and the text to which it is appended", Harkless v. Sweeny Independent School District, 427 F.2d 319, 322 (5th Cir. 1970), cert. denied, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971). See also John Hancock Mutual Life Insurance Company v. Bartels, 308 U.S. 180, 184, 60 S.Ct. 221, 84 L.Ed. 176 (1939). In view of the wide differences between *Aiello* and the case at bar, these warnings are particularly apposite here.

*Aiello* involved a challenge under the Equal Protection Clause to a provision of the California Unemployment Insurance Code which excluded disabilities due to normal pregnancy from coverage under a state-administered disability insurance program for private employees. A three-judge court below, with one judge dissenting, found that the exclusion of pregnancy-related disabilities from coverage under the California insurance program "is not based on a classification having a rational and substantial relationship to a legitimate state purpose" and therefore held that the challenged provisions of the statute violated the Equal Protection Clause and were constitutionally invalid. Aiello v. Hansen, 359 F.Supp. 792, 801 (N.D.Cal.1973).

The Supreme Court reversed, with three justices dissenting, Geduldig v. Aiello, *supra*. Justice Stewart, writing for the majority, considered the legislative purposes and policies sought to be accomplished by the California disability insurance program, the risks involved,

the costs of maintaining the program on a sustaining basis and the effects of including pregnancy-related disabilities within its coverage. Relying on Dandridge v. Williams, 397 U.S. 471, 486–7, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972), and Williamson v. Lee Optical Co., 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955), he pointed out that the Equal Protection Clause does not require a state to attack every aspect of a problem at once, and that "particularly with respect to social welfare programs, so long as the line drawn by the State is rationally supportable, the courts will not interpose their judgment as to the appropriate stopping point." Aiello, supra, 417 U.S. at 495, 94 S.Ct. at 2491.

Justice Stewart found that the State had shown a legitimate interest in maintaining its insurance program on a self-supporting basis, in keeping benefit payments at an adequate level for covered disabilities and in maintaining the contribution rates at a level not unduly burdensome for participating employees.

Justice Stewart concluded that "these policies provide an objective and wholly noninvidious basis for the State's decision not to create a more comprehensive insurance program than it has", Aiello, supra, at 496, 94 S.Ct. at 2492, and held that the exclusion of pregnancy-related disabilities from coverage under the California insurance program did not constitute invidious discrimination because of sex under the Equal Protection Clause.

Justice Brennan, writing for the dissent, was of the view that the California legislative classification was analogous to the legislative classifications held to be constitutionally invalid in Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971) and Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). Justice Brennan reiterated the views he had expressed in Frontiero, supra, at 688, 93 S.Ct. at 1771, that classifications based on sex or gender "are inherently suspect, and must therefore be subjected to strict judicial scrutiny." Justice Brennan also quoted his dissenting opinion in Kahn v. Shevin, 416 U.S. 351, 357–58, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974) to the effect that "[t]he Court is not . . . free to sustain the statute on the ground that it rationally promotes legitimate governmental interests; rather, such suspect classifications can be sustained only when the State bears the burden of demonstrating that the challenged legislation serves overriding or compelling interests that cannot be achieved either by a more carefully tailored legislative classification or by the use of feasible, less drastic means." Aiello, supra, 417 U.S. at 503, 94 S.Ct. at 2495. In Justice Brennan's view, California had failed to meet that burden and thus its exclusion of pregnancy-related disabilities violated the Equal Protection Clause.

Footnote 20 of the majority opinion,[9] on which the district court below principally relied in holding that Aiello required dismissal of the complaint in the

9. The full text of footnote 20, 417 U.S. at 496–7, 94 S.Ct. at 2492, is as follows:

The dissenting opinion to the contrary, this case is thus a far cry from cases like Reed v. Reed, 404 U.S. 71, [92 S.Ct. 251, 30 L.Ed.2d 225] (1971) and Frontiero v. Richardson, 411 U.S. 677 [,93 S.Ct. 1764, 36 L.Ed.2d 583] (1973), involving discrimination based upon gender as such. The California insurance program does not exclude anyone from benefit eligibility because of gender but merely removes one physical condition—pregnancy—from the list of compensable disabilities. While it is true that only women can become pregnant, it does not follow that every legislative classification concerning pregnancy is a sex-based classification like those considered in Reed, supra, and Frontiero, supra. Normal pregnancy is an objectively identifiable physical condition with unique characteristics. Absent a showing that distinctions involving pregnancy are mere pretexts designed to effect an invidious discrimination against the members of one sex or the other, lawmakers are constitutionally free to include or exclude pregnancy from the coverage of legislation such as this on any reasonable basis, just as with respect to any other physical condition.

The lack of identity between the excluded disability and gender as such under this insurance program becomes clear upon the most cursory analysis. The program divides potential recipients into two groups—preg-

case at bar, is in essence a refutation of the dissenting view as to the Equal Protection standards of judicial scrutiny applicable to the California legislative classification before the Court. It rejects the dissenting view that the California classification should be treated like the legislative classifications in *Reed, supra,* and *Frontiero, supra.* Stating that not *"every legislative classification* concerning pregnancy is a sex-based classification . . . ",* it goes on to say that "[a]bsent a showing that distinctions involving pregnancy are mere pretexts designed to effect an invidious discrimination against the members of one sex or the other, *lawmakers* are *constitutionally free* to include or exclude pregnancy *from the coverage of legislation such as this* on any reasonable basis . . .." (Emphasis added.) Thus, footnote 20 deals with the constitutional validity of legislative classifications under the Equal Protection Clause, the standards of judicial scrutiny to be applied in making such a determination, and nothing more. Moreover, it does so in the context of the extensive record before the Court as to the operation and effects of the particular statutory insurance program it was considering and the considerations which led the California legislature to adopt it.

Nowhere, either in the body of the majority opinion in *Aiello* or in the footnote, is there any reference to the provisions of Title VII or the EEOC guide-

lines designed to prohibit the disparate treatment of pregnancy disabilities in the employment context. Under the guidelines, disabilities caused by pregnancy or childbirth are declared to be temporary disabilities for all job-related purposes, requiring employers to treat such disabilities on the same terms and conditions as other temporary disabilities are treated.[10]

The EEOC guidelines under Title VII are an administrative interpretation of the Act by the enforcing agency and are thus entitled to "great deference", Griggs v. Duke Power Co., 401 U.S. 424, 434, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); Phillips v. Martin Marietta Corp., 400 U.S. 542, 545, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971) (Marshall, *J.,* concurring), unless their application would be inconsistent with an obvious Congressional intent. Espinoza v. Farah Mfg. Co., 414 U.S. 86, 94, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973).

If, as the district court below thought, *Aiello* was a definitive holding that, absent mere pretext, disparity of treatment of pregnancy-related disabilities could not constitute a violation of Title VII, *Aiello* would substantially circumscribe the reach of that Act of Congress and would invalidate the guidelines as to treatment of pregnancy disabilities issued by the EEOC. It is inconceivable that the majority opinion intended so to hold without even a mention of Title VII or the guidelines.[11]

---

nant women and nonpregnant persons. While the first group is exclusively female, the second includes members of both sexes. The fiscal and actuarial benefits of the program thus accrue to members of both sexes.

10. As previously pointed out, p. 1026, *supra,* the allegations of sex discrimination in the complaint in the case at bar are based upon these guidelines.

11. It should be noted that only five months before *Aiello* was decided, Justice Stewart, in his majority opinion in Cleveland Board of Education v. La Fleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974), held that mandatory maternity leave policies for public school teachers of the Cleveland Board of Education violated the Due Process Clause of the Fourteenth Amendment. Title VII was not applicable to

the cases before the Court in *La Fleur* since the maternity leaves at issue had occurred before Title VII was amended in 1972 to include state agencies and educational institutions. See Pub.L. 92–261, 86 Stat. 103. In n. 8, at 639, 94 S.Ct. at 796, Justice Stewart, referring to the 1972 amendment, expressly pointed out that,

"Shortly thereafter, the Equal Employment Opportunity Commission promulgated guidelines providing that a mandatory leave or termination policy for pregnant women presumptively violates Title VII. 29 C.F.R. § 1604.10, 37 Fed.Reg. 6837. While the statutory amendments and the administrative regulations are of course, inapplicable to the cases now before us, they will affect like suits in the future."

Beyond this, the question in the case at bar as to the consequences of disparate treatment of pregnancy-related disabilities in the private employment context must be analyzed and decided in a framework quite different from that in which the question was decided in *Aiello.* Here the issue is one of statutory interpretation, not one of constitutional analysis as in *Aiello.*

■ Under the Commerce Clause, Congress plainly has the power to prohibit by statute various forms of discrimination in private employment which it deems would adversely affect the flow of interstate commerce. Heart of Atlanta Motel v. United States, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964); Katzenbach v. McClung, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964).[12]

■ Title VII is legislation of this nature, designed to prohibit a broad spectrum of discriminatory evils which Congress deemed would have such an adverse effect. There is no requirement that the discriminatory practices forbidden by this statute should be limited to practices violative of the Equal Protection Clause. Practices forbidden by Title VII and the EEOC guidelines issued thereunder may, nonetheless, be able to survive Equal Protection attack.

■ Thus, the question to be decided in the case at bar is *not,* as in *Aiello,* whether exclusion of pregnancy-related disabilities from coverage violates the Equal Protection Clause. It is whether, as a matter of statutory interpretation, the practices complained of are forbidden by Title VII and the EEOC guidelines. We agree with the conclusion reached in the several recent well-reasoned cases dealing with the question of whether disparity of treatment between

pregnancy-related and other disabilities in the employment context violates Title VII, that *Aiello* is not dispositive of that issue. Wetzel v. Liberty Mutual Insurance Co., 511 F.2d 199 (3d Cir. 1975), affirming 372 F.Supp. 1146 (W.D.Pa. 1974); Vineyard v. Hollister Elementary School District, 64 F.R.D. 580 (N.D.Cal. 1974); Sale v. Waverly-Shell Rock Board of Education, 390 F.Supp. 784 (N.D. Iowa 1975). See also Union Free School District No. 6 v. New York State Human Rights Appeal Board, 35 N.Y.2d 371, 362 N.Y.S.2d 139, 320 N.E.2d 859 (1974); Farkas v. Southwestern City School District, 506 F.2d 1400 (6th Cir. 1974) (affirming judgment of district court that failure to pay teachers sick leave for absences relating to pregnancy constitutes discrimination on the basis of sex).

■ Finally, it should be noted that in the case at bar, in contrast to *Aiello,* only the bare allegations of the complaint couched in general language, largely taken from the statute and the guidelines, were before the district court. *Aiello* was decided on a full record in which the nature, details, operations and effect of the state insurance plan under attack and the reasons for its enactment were fully explored. The ultimate merits of the case at bar are not ripe for determination on such a record or at this stage of the proceedings.

What has been said thus far disposes of the narrow question presented on this appeal. That question is confined to the allegations of the complaint and the effect of *Aiello* thereon. We think it highly inadvisable, on an interlocutory appeal of this nature, to go beyond the bare limits of the question presented. In this state of the record it would be unwise to discuss any questions which might arise

---

It can scarcely be thought that Justice Stewart in *Aiello sub silentio* invalidated the guidelines which he had said only five months before in *La Fleur* would, in the future, affect suits involving pregnancy-related employment practices.

12. This is in addition to the Congressional power under Section 5 of the Fourteenth Amendment to enforce, by appropriate legisla-

tion, the dictates of the Equal Protection Clause. That power may reach more broadly than the Equal Protection Clause itself. See Katzenbach v. Morgan, 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966); United States v. Guest, 383 U.S. 745, 781–784, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966) (Brennan, *J.,* concurring and dissenting). See also Vineyard v. Hollister Elementary School District, 64 F.R.D. 580, 585 (N.D.Cal.1974).

during the further course of the action or to indicate any views which might bear on the ultimate merits. We expressly refrain from so doing.

We hold only that *Aiello* did not require the dismissal of the complaint as a matter of law for failure to state a claim on which relief could be granted under Title VII. Thus, the question posed on this appeal is answered in the negative. The order dismissing the complaint is therefore reversed and the action is remanded to the district court for appropriate proceedings consistent with this opinion.