Barbara R. HUTCHISON, Plaintiff-Appellee, Cross-Appellant,

v.

LAKE OSWEGO SCHOOL DISTRICT NO. 7 et al., Defendants-Appellants, Cross-Appellees.

Nos. 74–3181, 74–3182.

United States Court of Appeals, Ninth Circuit.

July 21, 1975.

Rehearing and Rehearing En Banc Denied Sept. 10, 1975.

Robert M. Greening, Jr. (argued), Portland, Ore., for appellant-cross appellee.

Carol A. Hewitt (argued), Portland, Ore., for appellee-cross appellant.

## OPINION

Before KOELSCH and CARTER, Circuit Judges, and SCHNACKE,* District Judge.

JAMES M. CARTER, Circuit Judge:

Defendants Lake Oswego School District Board ("the school board") and its individual members appeal from the judgment of the district court, enjoining the school board from refusing to grant sick leave benefits for absence due to childbirth, and awarding plaintiff Hutchison lost wages, costs, and attorney's fees against the school board and its individual members. Hutchison, on the other hand, appeals from the district court's dismissal of the Lake Oswego School District No. 7 ("the school district") on Eleventh Amendment grounds. We affirm in part and reverse in part.

Hutchison was employed for two school years by the school district as a part-time junior high school teacher. On January 27, 1973, she gave birth to a child, necessitating her absence from

---

* Honorable Robert H. Schnacke, United States District Judge, Northern District of California, sitting by designation.

work for 15 working days. She suffered no complications as a result of either her pregnancy or childbirth. Upon her return to work, she requested that she be allowed sick leave benefits for her absence—she had accrued 15 days sick leave at that time.

The school board refused her request on the basis of § 415.1 of the school district's Policies and Procedures and Ore.Rev.Stat. § 342.595, both providing for a minimum amount of sick leave for "illness or injury." Pregnancy was not deemed to be an "illness or injury" but rather a temporary disability permitting leave without pay. This interpretation was rendered by the superintendent of the Lake Oswego Schools and concurred in by the Director of Legal and Executive Services for the Oregon State Department of Education. The sum of $339.59 was deducted from Hutchison's wages because of her absence from her job and the necessity of hiring a replacement during her absence.

After exhausting all possible administrative remedies, she brought the present suit seeking a declaration that the school district's maternity leave policy constituted sex discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a). She also sought damages under 42 U.S.C. § 2000e–5(g), and attorney's fees under 42 U.S.C. § 2000e–5(k).

The case was submitted without trial on the briefs and certain stipulated facts. The district court dismissed the school district on the basis of sovereign immunity, but found that the school board and its individual members had engaged in unlawful sex discrimination in violation of both the Equal Protection Clause and Title VII. The case is reported below in 374 F.Supp. 1056 (D.C. Or.1974).

The defendants contend on appeal that: the refusal to grant sick leave benefits for normal pregnancy violates neither the Equal Protection Clause nor Title VII; the recovery of back pay and attorney's fees from the individual school board members is barred by the doctrine of qualified immunity for acts done in good faith and within the scope of their official duties; and such recovery against the school board is barred by the Eleventh Amendment. Hutchison contends that the doctrine of sovereign immunity was improperly applied to the school district.

## EQUAL PROTECTION

The decision of the district court was rendered prior to the Supreme Court's decision in *Geduldig v. Aiello,* 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974), which held that the State of California was not required by the Equal Protection Clause to provide for absences due to normal pregnancy and childbirth under its state disability benefits plan. The Court stated that the State has a legitimate interest in "distributing the available resources in such a way as to keep benefit payments at an adequate level for disabilities that are covered, rather than to cover all disabilities inadequately." *Id.* at 496, 94 S.Ct. at 2491. And with respect to the contention that discrimination on the basis of pregnancy constitutes "invidious discrimination" for purposes of equal protection, the Court stated:

"The California insurance program does not exclude anyone from benefit eligibility because of gender but merely removes one physical condition—pregnancy—from the list of compensable disabilities. While it is true that only women can become pregnant, it does not follow that every legislative classification concerning pregnancy is a sex-based classification . . . . Absent a showing that distinctions involving pregnancy are mere pretexts designed to effect an invidious discrimination against the members of one sex or the other, lawmakers are constitutionally free to include or exclude pregnancy from the coverage of legislation such as this on any reasonable basis, just as with respect to any

other physical condition." *Id.* at 496–497 n. 20, 94 S.Ct. at 2492.

The operation of Oregon's sick leave benefits plan differs somewhat from California's disability benefits plan, and, unlike the *Geduldig* defendant, the defendants in the present case did not make a strong showing below that the exclusion of normal pregnancy from the sick leave policy was necessitated by the increased administrative burden and cost of including such pregnancy. However, we hold that *Geduldig* dictates a similar result in the present case.

■ Hutchison has not suggested that the policy is a mere pretext designed to effect an invidious discrimination. And inclusion of normal pregnancy in the school district's sick leave plan would unquestionably "be substantially more costly than the present program and would inevitably require state subsidy, a higher rate of employee contribution, a lower scale of benefits . . . , or some combination of these measures." *Geduldig, supra,* at 495–496, 94 S.Ct. at 2491. We hold that Hutchison cannot validly base her claim on the Equal Protection Clause.

## TITLE VII

The defendants concede that Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* is applicable to the employment practices of the school board, and that the policy in issue is an "employment practice" within the meaning of Title VII. However, they rely upon Footnote 20 of *Geduldig, supra,* to support their contention that discrimination on the basis of pregnancy is not sex discrimination. But the defendants have greatly overstated the reach of *Geduldig* in general and Footnote 20 in particular.

First, the school district cites Footnote 20 as if it states that discrimination on the basis of pregnancy is *never* sex-based. That is not what the Footnote provides. Rather, it states that not *every* legislative classification concerning pregnancy is sex-based.

Second, in *Geduldig* the Court was considering whether such classification violated the Equal Protection Clause. Title VII was not at issue. The school district contends that since the threshold question under Title VII is whether or not there has been discrimination on the basis of sex, and since the Supreme Court in *Geduldig* has stated that exclusion of pregnancy benefits under a state disability plan is not sex-based, the Court decided the Title VII issue *sub silentio.*

■ Title VII, however, unlike the Equal Protection Clause, proscribes classifications which "*in any way* would deprive *or tend to deprive* any individual of employment opportunities *or otherwise adversely affect* [her] status . . . ." (Emphasis added).[1] This language certainly is conducive to an interpretation different from that premised upon the language of and cases interpreting the Equal Protection Clause. "In this posture our case is one of statutory interpretation rather than one of constitutional analysis. On this distinction alone we believe appellant's reliance on [*Geduldig*] is misplaced." *Wetzel v. Liberty Mutual Ins. Co.,* 511 F.2d 199, 203 (3 Cir. 1975), *cert. granted,* 421 U.S. 987, 95 S.Ct. 1989, 44 L.Ed.2d 476 (1975).

■ To effectuate the goals of Title VII, Congress entrusted the promulgation of regulations or guidelines thereunder to the Equal Employment Opportu-

---

1. Section 703(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a), provides in pertinent part:

"It shall be an unlawful employment practice for an employer—

(1) . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employ-

ment, because of such individual's . . . sex . . . or

(2) . . . classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex . . . ."

nity Commission (EEOC). 42 U.S.C. § 2000e–4. The guidelines so promulgated are the agency's interpretation of the statute and indicate what are or are not proscribed discriminatory practices. *Wetzel, supra,* 511 F.2d at 204. ' These EEOC guidelines are entitled to "great deference" with respect to the proper interpretation of Title VII. *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

▆ The EEOC guideline applicable to the school board's sick leave policy in the present case unequivocally provides that the exclusion of pregnancy or childbirth related disabilities from sick leave coverage is a violation of Title VII.[2] Unless "application of the guideline would be inconsistent with an obvious congressional intent not to reach the employment practice in question", the school board's sick leave policy must be deemed to be violative of Title VII. *Espinoza v. Farah Mfg. Co.,* 414 U.S. 86, 94, 94 S.Ct. 334, 339, 38 L.Ed.2d 287 (1973).

▆ In enacting Title VII, Congress intended to eliminate all discriminatory employment practices, H.Rep. No. 914, 1964 U.S. Code Cong. & Admin. News, p. 2401, including discriminatory treatment of men and women. *See Sprogis v. United Air Lines, Inc.,* 444 F.2d 1194, 1198 (7 Cir.), *cert. denied,* 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971).[3] Clearly, a sick leave policy which excludes from coverage absences related to pregnancy or childbirth adversely and disparately affects women with respect to employment benefits. This interpre-

tation is in no way inconsistent with the language of Title VII or congressional intent to eliminate all employment practices which discriminate on the basis of sex. In fact, "over the past decade, Congress has itself manifested an increasing sensitivity to sex-based classifications." *Frontiero v. Richardson,* 411 U.S. 677, 687, 93 S.Ct. 1764, 1770, 36 L.Ed.2d 583 (1973). *See also* 1972 U.S. Code Cong. & Admin. News, p. 2137 (House Report concerning sex discrimination and the 1972 amendments to Title VII).

In *Sprogis, supra,* it was stated with respect to Title VII: "The effect of the statute is not to be diluted because discrimination adversely affects only a portion of the protected class. Discrimination is not to be tolerated under the guise of physical properties possessed by one sex . . . or through the unequal application of a seemingly neutral company policy." 444 F.2d at 1198. We decline to ratify such discrimination under the facts of this case and in light of a reasonable EEOC guideline specifically proscribing the exclusion of pregnancy from sick leave coverage.

In the proceedings below, the defendants placed all of their "eggs" in the Footnote 20 "basket". On appeal they contend that the exclusion of childbirth from their sick leave policy is justified because pregnancy is voluntary and is not an "illness or injury", and because of the administrative burden and cost engendered by adding pregnancy and childbirth related disabilities to the sick leave coverage. In support of this latter de-

---

**2.** 29 C.F.R. § 1604.10(b) provides:

"Disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth, and recovery therefrom are, for all job-related purposes, temporary disabilities and should be treated as such under any health or temporary disability insurance or sick leave plan available in connection with employment. Written and unwritten employment policies and practices involving matters such as the commencement and duration of leave, the availability of extensions, the accrual of seniority and other benefits and privileges, reinstatement, and payment under any health or temporary disability in-

surance or sick leave plan, formal or informal, shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities."

**3.** "The scope of Section 703(a)(1) is not confined to explicit discrimination based 'solely' on sex. In forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes." *Sprogis, supra,* 444 F.2d at 1198.

fense, they cite statistics in the Brief of Amicus Curiae American Telephone and Telegraph Company.

 We do not consider factual and legal defenses raised for the first time on appeal. We do note, however, that administrative costs which might justify an employment practice for purposes of equal protection would not necessarily constitute an adequate defense under Title VII. Further, we must assume that the EEOC was aware of the increased costs that would be required in order to comply with its guidelines. And finally, those circuit courts and the majority of district courts which have considered the defenses raised by the school district have held them to be without merit. *See, e. g., Wetzel, supra,* 511 F.2d at 206: "Under Liberty Mutual's plan nearly all disabilities are covered. We believe that an income protection plan that covers so many temporary disabilities but excludes pregnancy because it is not a sickness discriminates against women and cannot stand." *See also Gilbert v. General Electric Co.,* 519 F.2d 661 (4 Cir. June 27, 1975); *Farkas v. South Western City School Dist.,* 506 F.2d 1400 (6 Cir. 1974), *aff'g* 8 FEP Cases 288 (S.D.Ohio 1974); *Vineyard v. Hollister School Dist.,* 64 F.R.D. 580, 585 (N.D.Cal.1974); *Sale v. Waverly-Shell Rock Bd. of Educ.,* 390 F.Supp. 784, 788 (N.D.Iowa 1975).

## ELEVENTH AMENDMENT—
## SOVEREIGN IMMUNITY

In *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Supreme Court held that retroactive welfare payments awarded against the Illinois Department of Public Aid were barred by the Eleventh Amendment, proscribing monetary awards against a State. In the present case, the district court awarded Hutchison sick leave benefits, costs, and attorney's fees under 42 U.S.C. § 2000e–5(k) against the school

board and its individual members, but dismissed the school district. The defendants contend that *Edelman, supra,* bars an award of back pay or attorney's fees against either the school district or school board. We disagree.

 The most important factor in determining whether a particular agency is the "alter ego" of the State for Eleventh Amendment purposes is "whether payment of a judgment will have to be made out of the state treasury, i. e., whether the fund in question has both the independent power and resources to pay the judgment without further action by the state legislature or other governmental officer." *Bowen v. Hackett,* 387 F.Supp. 1212, 1221 (D.R.I.1975). Also important to our decision are the following factors: performance by the entity of an essential government function, ability to sue or be sued, power to take property in its own name or in the name of the State, and corporate status of the entity. *George R. Whitten, Jr., Inc. v. State University Construction Fund,* 493 F.2d 177 (1 Cir. 1974).

The autonomous nature of school districts (and their administrative arms, the district school boards) in Oregon with respect to the factors noted above is evident from a reading of the relevant Oregon statutory provisions. Of primary importance is the fact that most of a school district's financing comes from local and not state-wide sources. Although the State does aid the various school districts, the amount is based upon the number of resident students and may not be used as an offset to the school district's own tax levy. Ore.Rev. Stat. § 327.090.[4] Therefore, the Lake Oswego School District has the *power* to obtain funds to satisfy a monetary judgment, and is precluded from applying *State* funds to offset such a levy. A set amount of State aid is awarded each year on the basis of the number of students, an amount which would not be

4. "327.090 Apportionments as revenue; limitation on use. The amount to be received from the Basic School Support Fund shall be included as revenue in the budget of each

school district. No part of such fund shall be apportioned and distributed to apply as an offset to a school district tax levy."

altered by the back pay award in the present case.

With respect to the other relevant factors, school districts are "bodies corporate", § 332.072,[5] and the district school boards may sue and be sued, § 332.072, may condemn property for school purposes, § 332.182,[6] and may contract indebtedness, § 328.565.[7] We hold that the analysis of the court in the recent case of *Gordenstein v. The University of Delaware*, 381 F.Supp. 718, 722–723 (D.Del. 1974), is equally applicable to the school district and school board in the present case:

"Since the state treasury is insulated from a judgment in the plaintiff's favor, since the University has both the funds and the legal power to satisfy such a judgment, and since under Del-

aware law the University is an independent corporation exercising virtually complete fiscal and educational autonomy, this Court concludes that the University is not an arm or alter ego of the State of Delaware under the Eleventh Amendment and therefore is not immune from suit. The fact that the University may be assisting the State of Delaware in the performance of a governmental function is not determinative." (Citations omitted.)

Our holding that neither the school district nor the school board as a body is immune from suit obviates the necessity of deciding two additional contentions raised by Hutchison: (a) that even if this is deemed to be a suit against the State, attorney's fees may be awarded in conjunction with the granting of prospective injunctive relief;[8] and (b) that

---

**5.** "332.072 Legal status of school districts. All school districts are bodies corporate, and the district school board is authorized to transact all business coming within the jurisdiction of the district and to sue and be sued. Pursuant to law, district school boards have control of the district schools and are responsible for educating children residing in the district."

**6.** "332.182 Condemnation of realty for school purposes. (1) Whenever it is necessary for any school district to acquire any real property for necessary school purposes, and the owner of the real property and the district school board cannot agree upon the price to be paid therefor, and the damage for the taking thereof, if any, the district school board may commence and prosecute any necessary or appropriate action for the condemnation of the real property required for school purposes. The title acquired by any school district by any such action shall be a fee simple title.

(2) The procedure for condemnation shall be the procedure provided by law for condemnation of land or rights of way by public corporations or quasi-public corporations for public use or for corporate purposes."

**7.** "328.565 Power to create indebtedness for current expenses and bond retirement; limitation. (1) Any district school board may contract indebtedness by the issuance of warrants or short-term promissory notes for the purpose of meeting current expenses, retiring outstanding bonds or warrants, or paying the interest thereon, whenever provision therefor has been made in its duly adopted budget. In the exercise of the authority given in this subsection, the district school board may contract or refund short-term loans which shall at no

time exceed in the aggregate 80 percent of the *ad valorem* taxes upon real and personal property theretofore levied and remaining uncollected for such school district for the tax year in which the warrants or notes are issued and 80 percent of other budgeted and unpledged revenues which the district school board estimates will be received from other sources during such tax year.

(2) A district school board may, at its option, borrow moneys pursuant to this section or ORS 287.402 to 287.432."
Such indebtedness may be paid by means of a *district-wide* tax levy:
"328.555 Property liable for district indebtedness; tax levy. (1) All taxable property in a school district at the time any indebtedness is incurred by such district and all taxable property subsequently located in the area comprising such district shall be liable to taxation for the payment of such indebtedness until paid."

**8.** This contention finds support in the recent cases of *Souza v. Travisono*, 512 F.2d 1137 (1 Cir. 1975), and *Downs v. Department of Public Welfare*, 65 F.R.D. 557 (E.D.Pa.1974). In *Downs* the court held that "an award of counsel fees is both clearly remedial and an integral part of a decree providing for prospective relief from violations of federal statutory and/or constitutional rights." Since such fees are incidental to prospective injunctive relief, are necessary to the future compliance with federal law (private attorney general theory), and have a minimal impact on the State treasury, "the Eleventh Amendment does not bar an order directing individual defendants to satisfy an award of attorneys fees from state funds." *Id.* at 2271. *See also Jordan v. Fu-*

the states in ratifying the Thirteenth and Fourteenth Amendments *consented* to Congress' authority under the enabling clauses of those Amendments to make state and local governments amenable to suit in federal court ·by individual employees.[9]

## QUALIFIED IMMUNITY OF INDIVIDUAL SCHOOL BOARD MEMBERS

■ Finally, the individual members of the school board contend that they are protected by a qualified "good-faith" immunity from liability for damages. We agree. In *Scheuer v. Rhodes,* 416 U.S. 232, 247–248, 94 S.Ct. 1683, 1692, 40 L.Ed.2d 90 (1974), the Supreme Court stated: "It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct."

Recently, this qualified immunity was extended to school board members acting in good faith. *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). The Court stated: "The official must himself be acting sincerely and with a belief that he is doing right, but an act of violating a student's constitutional rights can be no more justified by ignorance or disregard of settled, indisputable law . . . than by the presence of actual malice." *Id.* at 321, 95 S.Ct. at 1000.

Although the Court was dealing with student discipline in *Wood,* the principles enunciated are equally applicable in the present circumstances. The school board members did not disregard "settled, indisputable law" since the courts themselves have been split as to whether or not pregnancy may permissibly be excluded from sick leave coverage. The

sari, 496 F.2d 646, 651 (2 Cir. 1974); *Class v. Norton,* 505 F.2d 123, 126 (2 Cir. 1974).

**9.** *But see generally Skehan v. Board of Trustees, Bloomsburg State College,* 501 F.2d 31,

school board specifically asked the State Director of Legal and Executive Services for a ruling on the issue and acted in reliance thereon. Although we conclude that the school board's exclusion of pregnancy and childbirth related disabilities from sick leave coverage violated Title VII, the board members clearly acted in good faith and within their official capacities and are therefore entitled to ·qualified immunity from the payment of damages.

We affirm that portion of the district court's judgment and opinion finding that the Lake Oswego School District Board's sick leave policy violates Title VII, enjoining exclusion of pregnancy ·and childbirth related disabilities from the plan and awarding back pay, costs, and attorney's fees against said Oswego School District Board. We reverse the judgment and opinion so far as it dismisses the Lake Oswego School District No. 7 and holds liable the individual school board members for back pay, costs, and attorney's fees, and we direct that judgment be entered ·for Hutchison and against Lake Oswego School District No. 7, jointly and severally with Lake Oswego School District Board, for back pay, costs and attorney's fees; finally, we reverse that portion of the judgment and opinion finding the sick leave policy to be in violation of the Equal Protection Clause of the Fourteenth Amendment.

The cause is remanded for entry of judgment accordingly.

SCHNACKE, District Judge (concurring and dissenting).

I agree that defendants' conduct does not violate the Equal Protection Clause. But I do not believe it violates Title VII either.

The Supreme Court, in *Geduldig v. Aiello,* 417 U.S. 484, 496–497, incl. fn. 20, 94 S.Ct. 2485, 2492, stated:

"The California insurance program does not exclude anyone from benefit

42–43 n. 7 (3 Cir. 1974); *Jordon v. Gilligan,* 500 F.2d 701, 708–710 (6 Cir. 1974).

eligibility because of gender but merely removes one physical condition—pregnancy—from the list of compensable disabilities. . . . Normal pregnancy is an objectively identifiable physical condition with unique characteristics. . . . The program divides potential recipients into two groups—pregnant women and nonpregnant persons. While the first group is exclusively female, the second includes members of both sexes . . There is no risk from which men are protected and women are not. Likewise, there is no risk from which women are protected and men are not."

The Court was clearly saying that any discrimination in California's program was not because of sex and that any adverse effect the program's classifications had on plaintiffs there was not in any way due to their sex. A program with such characteristics would not involve illegal sex bias under Title VII [see 42 U.S.C. § 2000e–2(a)], and the school district's sick leave plan is such a program. Plaintiff here has not suggested that the district's "distinctions involving pregnancy are mere pretexts designed to effect an invidious discrimination against the members of one sex or the other" [see *Geduldig v. Aiello, supra* at fn. 20]. On the contrary, the district simply made a reasonable, good faith decision to cover only "illness or injury" in their program and, on good authority, determined that pregnancy is not an illness or injury. (The California program also covered only illnesses and injuries.)

Thus, there are compelling indications that the EEOC guidelines are wrong in treating the district's pregnancy exclusion as a Title VII violation, so that courts need not defer to them on this point [*Espinoza v. Farah Mfg. Co.,* 414 U.S. 86, 94–95, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973)].

Since I do not think plaintiff here has any claim on which a federal court may grant her relief, I express no opinion as to whether the Eleventh Amendment bars non-injunctive relief against defendants school district and school board or whether defendant school board members are individually liable for damages.